BECKWITH v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 19, 1912.)

1. MUNICIPAL CORPORATIONS (§ 360*)—CONSTRUCTION CONTRACTS—RIGHTS OF CONTRACTORS.

If a municipal contractor is required to perform portions of the work in a more expensive manner than is required by his contract and the specifications upon which he bid, he can recover his consequent damages.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 892, 892½; Dec. Dig. § 360.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. MUNICIPAL CORPORATIONS (§ 360*)—CONSTRUCTION OF CONTRACTS—RIGHTS OF CONTRACTOR.**

If a prospective bidder for a municipal construction contract applied at the office to which he was directed for an inspection of the plan of the work, and was there shown a plan which, read in connection with the specifications, sufficiently described the work, and was given no intimation that there were other more detailed plans in existence, he was justified in submitting a bid based upon the specifications which he received, and the plan which he was shown, and can recover damages through being compelled to perform additional work not so disclosed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 892, 892½; Dec. Dig. § 360.*]

**3. MUNICIPAL CORPORATIONS (§ 360*)—CONSTRUCTION OF CONTRACTS—RIGHTS OF CONTRACTORS.**

Though satisfied that he is being required to do more than his contract calls for, a municipal contractor may proceed and recover his consequent damages, not being required to refuse to proceed and sue upon a quantum meruit for what he has already done, if the question whether the thing required is embraced within his contract is fairly debatable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 892, 892½; Dec. Dig. § 360.*]

Appeal from Trial Term, New York County.

Action by Clinton Beckwith against the City of New York. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Terence Farley, for appellant.

Edward M. Grout, for respondent.

SCOTT, J. The plaintiff was a contractor with the city of New York for the improvement of the East Branch reservoir, constituting a part of the city's water system. The work included the raising of the spillway of the dam, raising and building the side walls of the spillway, some excavation and paving, and the building of stone fences. The work was completed to the satisfaction of the department having it in charge on January 2, 1906, and a final certificate given, upon which the final payment (excepting the retained repaving security) was made on February 28, 1906.

[1] This action is for damages for the breach of a contract by the city, in that, as is alleged, plaintiff was required and compelled to perform certain portions of the work in a more expensive manner than was required by the contract and specifications upon which he bid. It is now established that such an action will lie in a proper case, and subject to the limitations hereinafter to be referred to. Gearty v. Mayor, etc., 171 N. Y. 61, 63 N. E. 804; Lentilhon v. City of New York, 102 App. Div. 548, 92 N. Y. Supp. 897, affirmed 185 N. Y. 549, 77 N. E. 1190; Borough Construction Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480, 140 Am. St. Rep. 633.

[2] The circumstances giving rise to this action are briefly as follows: On July 8, 1903, the city of New York, by its department of water supply, gas, and electricity, invited proposals for bids for doing

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the work referred to. The advertisement stated in general terms the character, nature, and extent of the work to be performed, and informed intending bidders that forms of bids, together with a copy of the contract and specifications, could be obtained on application at the office of the chief engineer "where plans and drawings which are made a part of the specifications may be seen."

The plaintiff, through his engineer and superintendent of construction, obtained a copy of the contract and specifications, examined the ground upon which the work was to be performed, and applied at the office of the chief engineer to be allowed to examine the contract drawings. At this point there arises a conflict in the testimony. The plaintiff's engineer and superintendent allege that they were shown only a single plan, of which a copy was put in evidence, and marked "Exhibit G," by which name, for convenience, it will hereafter be mentioned. This plan contains an outline of the work to be done, with an indication of the character of work at different places, but exhibits no detail of the manner in which the several classes of work are to be performed. Other plans were prepared by the department and used by the engineers in charge of the work, which, in addition to the general plan and outlines exhibited on Exhibit G, also contained graphic illustrations of the details of different classes of work. These plans came to be known in the case as "Exhibits 3–C and 3–D," and will be so described hereinafter.

The question whether or not plaintiff was shown Exhibits 3–C and 3–D before he bid was sharply contested, and made the subject of a specific question put to the jury, which answered that he had not. The evidence in our opinion justified this answer. It must therefore be accepted as a settled fact in the case that, when plaintiff bid, he had before him only the contract, specifications, and a plan of which Exhibit G is a copy. While this plan did not show all the details of the work to be performed, the specifications were very full, and we see no reason why an experienced bidder with these specifications and this plan before him could not intelligently bid upon the contract. If so, there was no reason why he should seek for any more detailed plan than that which was exhibited to him at the chief engineer's office where the advertisement directed him to apply. So long as a prospective bidder applies at the office to which he was directed to apply for an inspection of the plan, and is there shown a plan which, read in connection with the specifications, sufficiently describes the work to be done, and is given no hint or suggestion that there are other more detailed plans in existence, he is, in our opinion, justified in submitting a bid based upon the specifications which he has received and the plan which he has been shown. This is what plaintiff did, and there would probably never have been any question about the work to be performed were it not for the fact that the more detailed plans, Exhibits 3–C and 3–D, differed from the specifications, in that, as to certain items of work, they called for a more expensive method of construction than was called for by the specifications. The engineers in charge of the work insisted that it should be done as required by the plans, Exhibits 3–C and 3–D. The plain-

tiff protested that his contract only required him to comply with the specifications, but, finding his protests unavailing, he yielded and completed the work as required by the engineers. His action is for additional cost of the work in consequence of the insistence of the engineers that it should be done according to the details shown in Exhibits 3–C and 3–D, and not according to the specifications. Assuming, as we do, that the jury were right in finding that Exhibits 3–C and 3–D were not shown to plaintiff until after he had made his bid, he was justified in basing his bid upon the specifications, and indeed it is not clear, even if he had been shown Exhibits 3–C and 3–D, that he would not have been justified, when there was a discrepancy between those plans and the specifications in basing his bid upon the latter. Dean v. Mayor, etc., 167 N. Y. 13, 60 N. E. 236. However that may be, the ascertained facts in the present case are that plaintiff was not shown Exhibits 3–C and 3–D, and that, as to several items, the work that he was required to do exceeded in costliness the work required by the specifications; and that requiring him to do the work in the more expensive manner constituted a breach of the contract.

[3] It is urged on the part of the defendant that plaintiff, if satisfied that he was being required to do more than his contract called for, should have refused to proceed, and have sued upon a quantum meruit for what he had already done, because, as is argued, the engineers had no authority to order or require work not called for by the contract. A similar argument was addressed to the Court of Appeals in Borough Construction Co. v. City of New York, supra. The court, however, held that this objection should not prevail in every case, and laid down a rule to govern similar claims for damages. It said:

"These considerations seem to suggest the general rule that where the municipal representatives, without collusion and against the contractor's opposition, require the latter to do something as covered by his contract, and the question whether the thing required is embraced within the contract is fairly debatable, and its determination surrounded by doubt, the contractor may comply with the demand under protest and subsequently recover damages, even if it turns out that he was right and that the thing was not covered by his contract."

The present, as it seems to us, is a proper case for the application of this rule. The discrepancy between the plans, Exhibits 3–C and 3–D, and the specifications, certainly raised a debatable question as to which the contractor was bound to follow. These discrepancies related to the manner in which work called for by the contract should be performed, and did not include items of work entirely outside the contract. We are therefore of the opinion that the plaintiff was entitled to recover upon the items of his claim as to which the jury awarded damages, and the amount of those damages as found by the jury is supported by the evidence.

It follows that the judgment and order must be affirmed, with costs. All concur.