(160 App. Div. 284)

UVALDE CONTRACTING CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 23, 1914.)

1. MUNICIPAL CORPORATIONS (§ 358*) — PAVEMENT CONTRACTS — ENGINEER'S CERTIFICATE.

Where the contract for the repair of pavements required that the amounts should be ascertained from the records of the engineer, the certificate of the engineer as to the amount of work is conclusive upon the contractor, except for bad faith and mistake, or where the engineer has attempted to interpret the contract, and has erred in interpretation based upon the law applicable thereto.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 890; Dec. Dig. § 358.*]

2. MUNICIPAL CORPORATIONS (§ 368*)—PAVING CONTRACTS—CONSTRUCTION.

Where a contract for the repair of pavement provided that the repairs should be indicated by chalk marks made by the inspectors, and any imperfect work should be rejected, the contractor is entitled to payment for overlaps in patches caused by the failure of the inspectors to mark the place for patches as large in the first instance as they should have been made, and necessitating the removal of the patch and the laying of a larger patch.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

Ingraham, P. J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by the Uvalde Contracting Company against the City of New York. From a judgment dismissing the complaint, plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward M. Grout, of New York City, for appellant.

Terence Farley, of New York City, for respondent.

SCOTT, J.   This action is upon a contract for repairing asphalt pavements within a specified area in the city of New York. The contract was dated August 11, 1911, and it was so drawn as to cover the period expiring December 31, 1911. The contract required the plaintiff to make repairs to the asphalt pavement of the specified streets when and where directed, as may be deemed to be necessary, and to maintain said pavement in good condition to the satisfaction of the borough president during the term of the contract. For this it was to be paid a specified price per square yard for asphalt pavement measured in place, and other specified price for laying Portland cement concrete foundation, or relaying old stone pavement, if and when found necessary. The contract provided for monthly 90 per cent. payments upon provisional or partial estimate, and a final payment upon a final estimate at the completion of the contract. It was specifically provided that:

"The amount of pavement to be paid for shall be that computed from the records of the engineer in charge of the work." See clause F. F. Contract.

The work was begun immediately after the execution of the contract. The pavement to be relaid was indicated by chalk marks by inspectors of the bureau of highways, under the direction of Daniel B. Goodsell, an assistant engineer. The places or areas so marked were repaired by the contractor with a sheet asphalt pavement, sometimes on the existing base, and sometimes on a new base of concrete or stone. Other inspectors, with the aid of plaintiff's employés measured the dimensions of the patches of new pavements there laid, and fixed their location with reference to intersecting streets and the curb lines of the street under repair. These data were recorded in official books kept for the purpose, and were compiled in the office of the borough president, and certified to Engineer Goodsell, who in turn certified the amount of work done to the chief engineer, by whom it was certified to the commissioner of public works. Four provisional or partial estimates were made in this manner, as to each of which Mr. Goodsell, the assistant engineer in charge of the work, certified that he had—

"personally examined and inspected the above-named work, and that it had been well done and in full compliance with the contract and specifications therefor."

The total amount of pavement actually laid as shown by the records and the provisional estimates was 151.52 square yards. When the chief engineer came to make up his final estimate he deducted 1,528.7 square yards. The plaintiff now sues to recover for the pavement

thus deducted, at the contract price. It is the claim of the plaintiff, and appears to be the fact, that the amount of pavement thus deducted represented what are known as "overlaps." It was shown that in the course of the repair work the plaintiff, under the direction of the engineer in charge, moved from place to place, laying patches of pavement only where marked by the inspector, and only within the area circumscribed by the marks. It happened, not infrequently, that some time after a patch had been satisfactorily laid the inspector would mark out for repair an adjacent area of pavement, and so mark it that the area then designated would overlap a part of the area theretofore repaired, with the result that the plaintiff would be obliged to remove and replace pavement which it had already relaid satisfactorily. So far as appears, the necessity for relaying these so called "overlaps" was not, at least in most cases, due to any fault of plaintiff or imperfection in his work, but solely either to the failure of the inspectors to mark a sufficiently large patch for repair in the first instance, or to causes arising after the first patch had been laid. The plaintiff was not at fault for not having cut out a sufficiently large patch at first, because it was limited to such repairs as it was ordered to make, nor can we say, upon the evidence as it stands, that it was responsible for any deterioration in the work as first laid due to the fact that too small a patch had been ordered repaired.

The contract contains the usual stringent provision authorizing the engineer to require imperfect or unsatisfactory work to be done over again; but it does not appear that any work was condemned under these clauses. This fact, coupled with the certificate quoted above, which was appended as well to the final certificate as to the provisional or partial certificates, justifies the inference, at least on appeal from a nonsuit, that no part of the amount deducted from the total area of pavement laid was so deducted because of defects in the work, and compels the inference that the deductions were made solely on account of the "overlaps," resulting, as above indicated, in taking up and replacing work which had once been done satisfactorily in accordance with the contract and the orders of the engineer in charge.

[1, 2] The court excluded much evidence offered by plaintiff, and finally dismissed the complaint upon the ground that the final certificate of the engineer was binding and conclusive upon the contractor unless successfully impeached for fraud, bad faith, or palpable mistake appearing upon the face thereof. There is of course no doubt about this general rule, and so the plaintiff freely concedes. It is not, however, applicable to every case, and the plaintiff's contention is that an equally well-established rule is that the final certificate and determination of the engineer are not binding upon the contractor, where the engineer has attempted to interpret the contract, and has erred in an interpretation based upon the law applicable thereto. The rule for which plaintiff contends has often been enunciated and applied, and perhaps never more satisfactorily than in Burke v. Mayor, 7 App. Div. 128, 40 N. Y. Supp. 81, which has frequently been cited with approval. In that case the late Presiding Justice Van Brunt wrote as follows:

"It is further claimed upon the part of the defendant that the contract providing that the final certificate and return of the engineer should be con-

clusive as to the amount of materials furnished and work done, and the engineer having made such final certificate, which did not include the items for which a recovery is claimed in this action, and there being no proof of fraud on his part, no recovery can be had; and our attention is called to various authorities in which it is held that such certificate is final as between the parties, it having been so agreed. But we fail to find any case which holds that, where the engineer has, upon an erroneous construction of the contract and of the rights of the parties thereunder, deliberately excluded from his final certificate work which has been done by the contractor, although he may have acted with an honest purpose, the contractor is precluded from showing that he has done such work, and that it is included in the terms of his contract. In the case at bar it is not seriously claimed that the contractor did not do the work for which compensation is sought in this action. But it is claimed that it was without the terms of the contract; and it is upon this theory that the engineer excluded the items representing such work in his final certificate. But if it should be found upon an examination of this contract that this work, or any part of it, was included within the terms of the contract, it seems to us that it would be a harsh rule to hold that because the engineer had acted upon a mistaken view of the law the contractor would be remediless. We do not think that any of the cases cited goes as far as that. It is undoubtedly true that where there is any dispute in regard to the work or its character, the certificate is final if honestly given. But where a contract calls for the performance of work which the contractor has done, and the engineer, upon an erroneous construction of the contract, has excluded it from his final certificate, it is clear that the contractor has a right to recover notwithstanding the provisions of the contract in regard to the final certificate."

See, also, Molloy v. Village of Briarcliff Manor, 145 App. Div. 483, 129 N. Y. Supp. 929; Thilemann v. Mayor, 66 App. Div. 455, 73 N. Y. Supp. 352; St. George Contracting Co. v. City of New York, 205 N. Y. 121, at page 126, 98 N. E. 387; Borough Construction Co. v. City of New York, 200 N. Y. 149, 93 N. E. 480, 140 Am. St. Rep. 633.

From evidence which was received without objection, and other· evidence which was offered but excluded, it appears that plaintiff, if allowed to do so, could have shown that the chief engineer, in making the deductions complained of, did so because he so construed the contract as to require the deduction of overlaps under the maintenance clause of the contract. The contract required the contractor, not only to lay the pavement where required, but also to "maintain it in good condition to the satisfaction of the president during the term of the contract." It is quite obvious that this obligation to maintain the pavement laid under the contract did not cover the case of patches of pavement properly laid in the first place, and which were required to be renewed, not for any deterioration due to workmanship or materials, but solely because the engineers found as the work progressed that a larger patch should have been ordered repaired than had been so ordered, and consequently that work once satisfactorily done should be torn out and done over again. If this was the construction given to the contract by the chief engineer, as the plaintiff claims and the evidence seems to show, it was clearly erroneous as matter of law, and the case falls within the rule laid down in the case above cited. The contract required the plaintiff to relay patches wherever required. Each patch called for a certain amount of labor and materials, and as much for the second or third time of laying as for the

first. If the work was properly done, as ordered, the contractor became entitled to payment at the stipulated price. He was bound to maintain it as it was laid, and was bound to make good any defects or deterioration which might develop, during the lifetime of the contract, owing to any defect in his workmanship or to defective materials furnished by him. In what manner repairs so arising should be required to be made was specifically provided. But it would be a most unjust and unreasonable construction of the contract to refuse to pay the contractor for work properly done, and which did not require to be repaired or replaced on account of anything for which the contractor was responsible.

The court also excluded certain evidence which, as it is claimed, would show that the engineer to whom prospective bidders were referred had interpreted the contract, and had advised the plaintiff before it bid that overlaps would not be deducted, and that plaintiff bid in reliance upon this statement. The evidence did not go far enough to show clearly whether or not this statement could properly be attributed to this particular contract; but, assuming that it could, we are of opinion that it should have been admitted. Beckwith v. City of New York, 148 App. Div. 658, 133 N. Y. Supp. 202.

It follows that the judgment and order appealed from must be reversed and a new trial granted, with costs to appellant to abide the event.

McLAUGHLIN, LAUGHLIN, and CLARKE, JJ., concur.

INGRAHAM, P. J. (dissenting). By the contract and specifications under which this work was done the plaintiff agreed to remove and replace with new asphalt pavement all such portions of the existing asphalt pavement within the limits specified as had become badly worn, bunched, depressed, or damaged; that any materials furnished or work done not satisfactory to the engineer should be immediately removed and satisfactorily replaced by the contractor; that the contractor would furnish all the labor and materials at his own expense, necessary or proper for the purpose, and in a good, substantial, and workmanlike manner, and, in strict accordance with the specifications therein contained or thereto attached, make repairs to the asphalt pavement of the streets mentioned, when and where directed as may be deemed to be necessary, "and maintain said pavement in good condition to the satisfaction of the president during the term of this contract"; that "the engineer shall inspect the materials to be furnished and the work to be done under this agreement, and see that the same strictly correspond with the specifications herein contained, or hereto annexed, which materials and workmanship shall always be subject to the approval of the engineer"; that to prevent all disputes and litigation, the engineer should in all cases determine the amount or the quality of the several kinds of work and materials which are to be paid for under the contract, and he should determine all questions in relation to the work or materials and the construction thereof; and he should in all cases decide every question which might arise relative to the execution of the

contract on the part of the contractor, and his estimate and decision should be final and conclusive, and such estimate and decision, in case any question shall arise, should be a condition precedent to the right of the contractor to receive any money under the contract. Any doubt as to the meaning of these specifications, or any obscurity as to the wording of them, would be explained by the engineer, and all directions and explanations requisite or necessary to complete, explain, or make definite any of the provisions of these specifications and give them due effect will be given by the engineer; that the work should be performed in the best manner, and all materials of which the work is composed should be of the best kind, and a sufficient number of persons should be at all times employed to execute the work with due dispatch, the whole to be done to the satisfaction of the engineer, and any materials furnished and work done not satisfactory to the engineer should be immediately removed and satisfactorily replaced by the contractor; and that "the action of the engineer by which the contractor is to be bound and concluded according to the terms of this contract shall be that evidenced by his final certificate, all prior certificates upon which ninety per cent. (90%) payments may be made being merely estimates, and subject to the corrections of such final certificate, which may be made without notice to the contractor thereof or of the measurements upon which the same is based." There was a further provision that the city should not, nor should any department or officer thereof, be precluded or estopped by any return or certificate made or given by the president, any engineer, or other officer, agent, or appointee of the city under any provision of this agreement from at any time, either before or after the final completion and acceptance of the work and payment therefor pursuant to any such return or certificate, showing the true and correct amount and character of the work done and materials furnished by the contractor. The contract further provided that the contractor should receive the prices named for furnishing all the materials and labor and the performance of all the work set forth in the specifications and form of contract, and in all respects performing and completing the same.

The plaintiff did the work required of him by the defendant's officers and the engineer issued the final certificate as to the amount of work done, and for which the plaintiff was entitled to be paid, and the plaintiff has been paid the amount required by the final certificate. It brings this action to recover an additional amount represented by the work done in taking up certain portions of the pavement that it had laid under the contract, and replacing same with new pavement, as directed by the engineer. This contract is plain and unambiguous. The plaintiff entered into it with full knowledge of its provisions. Under the contract the amount the plaintiff was to receive was to be evidenced by the final certificate from the engineer, and the city was not to be estopped or precluded by the action of any engineer or other officer at any time either before or after the final completion and acceptance of the work and payment therefor. Under the contract the plaintiff was bound to maintain the portion of pavement repaired by it in good order and condition during the whole term of the contract, and

145 N.Y.S.—39

he was bound to repair any portion of the pavement that it laid which had become out of repair during such period. The complaint alleges that the engineer had made the final certificate, and had been paid by the defendant the amount called for by that final certificate, that the plaintiff duly demanded from the chief engineer of the bureau of highways and from the president of the borough of Manhattan that they and each of them certify to the comptroller for payment the remaining 1,528.7 square yards of asphalt pavement laid by it, and the said chief engineer of the bureau of highways and the president of the borough of Manhattan refused to make and transmit such certificate to the comptroller of the city of New York; that the acts of the said chief engineer of the bureau of highways and the president of the borough of Manhattan of the city of New York, and of each of them, in refusing to make and transmit a certificate for payment for 1,528.7 square yards of asphalt pavement at the price specified, were arbitrary and erroneous, and constituted a fraud upon the plaintiff and a breach of the said contract. But, as to that allegation, there is no proof, as I read the record. The parties by the contract have provided that the chief engineer should determine the work to be done, should determine what of the work that had been done was not properly done, and what of the pavement laid by the plaintiff should be relaid to keep the pavement in good repair during the term of the contract, and that the plaintiff should be paid for full completion of the contract such sum as the engineer should certify the plaintiff was entitled to receive under the contract. In making repairs to the pavement, and in keeping the pavement so repaired in good condition, during the term of the contract, the contractor was to be bound by the determination of the engineer and the determination, by which it was to be bound was the final certificate which the engineer had executed, and for which the plaintiff had been paid. This, as I read the contract, the plaintiff has agreed should be the full consideration which should be paid to it for the work done under the contract. There is not the slightest evidence that the engineer acted in bad faith, that all the work done by the plaintiff has not been paid for, except that portion of the pavement which is laid, and which the engineer had ordered removed and relaid in order to keep the pavement in good condition during the term of the contract. The defendant is a municipal corporation. These contracts are executed and accepted by contractors, and I can see no reason why these contractors should not be bound by the contracts under which they do the work, and be entitled to the amount which they have expressly contracted they should receive for doing the work. The distinction between a contract of this kind and one by which the contractor is to construct a building, or perform a specified piece of work, where the engineer has refused to certify the amount due under the contract, is clear. Assuming that the plaintiff was required by the engineer to take up some portion of the pavement that it had laid and replace it, and did that work, it seems to me that the contract expressly contemplates when that is done the contractor is not to be entitled to receive payment for the pavement thus replaced. Thus, I think the engineer was right in refusing to certify that the plaintiff was entitled to be

paid the contract price for the removal and relaying of the pavement which it had laid.  But if there was a question as to whether that pavement was properly ordered to be replaced, or that such removal was properly ordered by the engineer, that question was one which, by the express terms of the contract, was to be determined by the engineer, and if he, in good faith, determined that the pavement relaid was necessary to keep the pavement in good condition, the plaintiff was bound by that certificate.  Under the provisions of this contract, the plaintiff is not entitled to recover any sum in addition to that covered by the final certificate actually issued, and the amount due under that final certificate the plaintiff admits having received.  I think, therefore, the court below was right in dismissing the complaint, and that the judgment should be affirmed.