E. H. SMITH CONTRACTING COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

Contract — New York city — provision in public contract that alterations will be paid for at cost plus ten per centum when not susceptible of classification under schedule of unit prices — provision making engineer final arbitrator of questions arising under contract — contractor not bound by decision of engineer if purely arbitrary or based upon error or bad faith — action to recover difference between cost plus ten per centum for extra work and amount certified by engineers at unit price rates — when contractor may not be defeated because of provision in contract making engineer final arbitrator.

1. Where a contract for public work provided that the location and detail of the work might be changed during its progress and that payment for work and material that might be required by such alterations, when not susceptible of classification under the schedule of unit prices,

should be made at net cost, plus ten per centum and by a further provision of the contract the determination and estimate of the engineer was made final as to all questions in relation to the work and the construction thereof and his determination and estimate made a condition precedent to the right of the contractor to receive any money in case of dispute, assuming that the question as to whether extra work is susceptible of classification under the schedule of unit prices is to be submitted to the engineer, his certificate, if a condition precedent to payment, may not be arbitrarily withheld, and if his action involves an erroneous construction of the contract, if it appears that there is no reasonable basis whatever for his action or if it is patently erroneous, the equivalent of bad faith on his part is found and the contractor is not bound by his decision.

2. Where, in an action by the contractor to recover the difference between an amount certified by the engineer to be paid for alterations at unit price rates and the actual cost of the work done, plus ten per cent, to which the contractor claimed it was entitled for the reason that the work and materials were not susceptible of classification under the unit prices bid, upon examination of the various items involved it appeared that as to one, either the decision of the engineer was entirely arbitrary or based upon an interpretation of the contract which permitted him to give to certain words a far wider meaning than is permissible, as to another that the kind of work required by the change was far more expensive than that originally contemplated and the material itself was also far more expensive, and as to a third that the work was not included in the original contract but was ordered by the Commission, the contractor may not be defeated because of the provision in the contract making the engineer the final arbitrator of questions arising under the contract, and a holding of the Appellate Division to that effect, as matter of law, will be reversed.

*Smith Contracting Co.* v. *City of New York*, 209 App. Div. 271, modified.

(Argued June 3, 1925; decided July 15, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 9, 1924, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict.

*Martin Conboy, Henry T. Hall, Philip W. Boardman* and *H. H. Ramsey* for appellant. Where, as in the present case, the plans are changed so as to compel the contractor

to perform work and furnish materials of a kind not contemplated in the contract nor shown on the contract drawings, the question of whether such work and materials should be classified under the extra work clause or under the unit prices is a question of construction of the contract and the engineer's decision thereon is not final but is reviewable by the courts. (*Nat. Cont. Co.* v. *H. R. W. P. Co.*, 192 N. Y. 209; *Langan Construction Corp.* v. *State of New York*, 110 Misc. Rep. 177; *Horgan* v. *Mayor*, 160 N. Y. 516; *Mulholland* v. *Mayor*, 113 N. Y. 631; *Foundation Co.* v. *State*, 233 N. Y. 177; *Daniels Co.* v. *City of New York*, 198 App. Div. 856; *Burke* v. *Mayor*, 7 App. Div. 129; *Dock Contractor Co.* v. *City of New York*, 296 Fed. Rep. 377; *Uvalde Contracting Co.* v. *City of New York*, 160 App. Div. 284.)

*George P. Nicholson, Corporation Counsel* (*John F. O'Brien* and *Elliot S. Benedict* of counsel), for respondent. No evidence sustains the allegation that the final certificate was made under a misconstruction of the terms of the contract. Clearly, the engineer's construction is correct. (*Borough Const. Co.* v. *City of New York*, 200 N. Y. 149; *Nat. Cont. Co.* v. *H. R. W. P. Co.*, 192 N. Y. 209.) Under the terms of the contract, the engineer is the final arbiter on disputed questions of fact relating to proper classification. (*Sweet* v. *Morrison*, 116 N. Y. 19; *Neidlinger* v. *Onward Const. Co.*, 107 App. Div. 398; 188 N. Y. 572; *Condict* v. *Onward Const. Co.*, 210 N. Y. 88; *Allen* v. *City of Oneida*, 210 N. Y. 496; *Phelan* v. *Mayor*, 119 N. Y. 86; *U. S.* v. *Cook*, 207 Fed. Rep. 682; *Cook* v. *Foley*, 152 Fed. Rep. 41; *Daniels Co.* v. *City of New York*, 196 App. Div. 856.)

ANDREWS, J. In March, 1913, the city of New York, acting by the Public Service Commission for the first district, entered into a contract with the appellant for the construction of over three miles of elevated railroad

in the borough of Queens. About four thousand feet consisted of concrete arches resting upon concrete pillars and the remainder was the ordinary steel overhead road. The contractor was to be paid at a unit price rate for the various classes of work to be done and materials to be furnished by him. The contract contained detailed specifications and referred to various drawings which accompanied it and which were said to indicate more particularly the details of the construction. Again it is stated that the dimensions and other characteristics of the railroad are more fully stated in the specifications forming a part of the contract and in the detailed drawings. The general idea, therefore, was to construct an elevated railroad in accordance with these papers. The project, however, so far as the concrete structure was concerned was an experimental one. No such railroad had been theretofore built in the city streets in that form and the Commission wisely enough reserved the right to make such alterations as experience might show were desirable or necessary. " The commission," article 15 of the contract states, " further reserves the right to change the location, and to alter in any way it may deem necessary for the public interests, the drawings aforesaid in part or altogether at any time during the progress of the work without constituting grounds for any claim by the contractor for payment or allowance for damages or extra service other than as provided for items of the different classes of construction shown in the schedule, or where not susceptible of classification, then as otherwise provided herein." Payment for work and materials that might be required by such possible alterations are regulated by article 12. " In case any work or material shall be required to be done or furnished in or about the works — whether specified herein or indicated on the plans or not — which are not susceptible of classification under the schedule of unit prices, the contractor shall and will, if ordered by the engineer, do and perform such

work and furnish such materials at and for the actual and necessary net cost in money to the contractor for labor and for material, where new material is used, and in addition thereto ten per centum of such net cost for the use of tools and plant, superintendence and all other expenses incidental to the performance of such work and the furnishing of such material; and the contractor shall have no further claim in excess of the above; but this method of payment shall not apply to the performance of any work and the furnishing of any material which in part or in whole is susceptible of classification under such schedule, which work or material shall be paid for, in part or in whole as the case may be, at the unit price given in such schedule, except as herein otherwise expressly provided."

The work was begun at once and completed in the fall of 1916. The Commission certified that it was accepted. There had been, however, many changes from the original design and when the final estimate was prepared it was rejected by the contractor. The dispute arose over these two clauses. The engineer of the Commission certified that payment should be made for these alterations at unit price rates. The actual cost of the work done and the materials furnished because of them plus ten per cent is concededly much over $100,000 above the price so fixed. The contractor claims that this work and these materials were not susceptible of classification under the unit price bid and that he is entitled, therefore, to the amount of this cost and ten per cent. That is the amount he received in the trial court, in some cases the jury finding that the work done was not so susceptible of classification and in others the court holding to the same effect as a matter of law. The Appellate Division has reversed the judgment in so far as it permitted the contractor to recover these items and has placed its reversal upon certain other provisions of· the contract. Article 24 provides: " To prevent dis-

putes and litigations, the engineer shall in all cases determine the amount, quality, acceptability and fitness of the several kinds of work and materials which are to be paid for under this contract; shall determine all questions in relation to the works and the construction thereof, and shall in all cases determine every question which may arise relative to the fulfillment of this contract on the part of the contractor. His determination and estimate shall be final and conclusive upon the contractor, and in case any question shall arise between the parties hereto, touching this contract, such determination and estimate shall be a condition precedent to the right of the contractor to receive any money under this contract."

This provision, the Appellate Division says makes the engineer the final arbitrator in regard to the classification of this altered work ordered by the Commission. Such a classification does not call for a construction of the contract and there is no evidence of fraud or bad faith on the part of the engineer. Its reversal of the court below is purely on a question of law. No finding of the jury as to the facts is disaffirmed.

Without unduly extending this opinion it would be impossible for us to discuss each of the items involved in this itigation. It will be suffic ent to take three as examples and after determining the rule ˙ applicable to them to summarily state our conclusions as to the others. We will, therefore, consider claim No. 34 for dressing the exterior surface of the concrete for which $34,734.38 is asked, claims Nos. 59, 3, 60 for steel used to build stations involving $18,988.12, and claim No. 42 for $7.16.

As has been said, some four thousand feet of this work was for a concrete elevated railroad. Various sections of the specifications must be referred to. Section 235 provides that the surfaces of the concrete masonry for the reinforced concrete elevated railroad shall be finished as indicated on the contract drawings, or as ordered, either with a natural cement finish rubbed, washed,

dressed, tooled or otherwise treated on the surface as directed, or with a mortar faced finish. * * * Immediately following the removal of the forms, followed by the removal of the projections and the filling of the voids, etc., herein provided, the entire concrete surface to be finished shall be treated in such a manner as directed, and so as to insure a uniform surface of the desired color and texture. Section 239: In order to remove the cement film and to obtain the desired surface treatment the wire brush, sand blast, pneumatic hammer or tools ordinarily used for dressing stone surfaces shall be used when required. Section 267: The work to be done under this contract upon or in connection with the reinforced concrete elevated railroad includes the furnishing and constructing complete in place of the finish of all exposed concrete surfaces * * * at the prices stipulated in items 6-B and 6-C. Item 6-B provided that the contractor should be paid seventeen and one-half cents per square yard for natural cement finish for the reinforced concrete elevated railroad in place.

Concrete masonry is laid by pouring the concrete mixture into forms; then with a spade or suitable tool the rougher materials are thrust back from the face of the form and the void is filled with water carrying particles of pure cement and the finer particles of sand or the like. When set there may be imperfections at the joints or elsewhere. Projections must be removed and holes patched. Sometimes a film — a thin deposit — appears here and there upon the surface causing discoloration. This is to be removed it is said by the use of a wire brush, by the pneumatic hammer, or by stone dressing tools if required. These means are also to be used to obtain the desired surface treatment. The result is what is known as " natural cement finish."

Under the contract, therefore, provided the concrete surfaces were finished as indicated in the drawings, or

32

with a natural cement or with a mortar face finish if the Commission so preferred, the contractor would be paid therefor at unit price rates. If a natural cement was chosen it was " to be rubbed, washed, dressed, tooled or otherwise treated on the surface as directed." The purpose of this clause was " to insure a uniform surface of the desired color and texture." Any film was also to be removed. This is the " desired surface treatment " elsewhere referred to. To attain this end doubtless some reasonable latitude was allowed, but the result was to be fairly described as " natural cement finish."

The drawings showed a mortar face finish on all vertical surfaces and on horizontal surfaces no finish except such as is the result of pouring concrete into forms. The Commission evidently decided this was not satisfactory. Samples showing different ornamental designs were prepared and considered. Finally on September 3d the contractor was ordered to finish all exposed concrete surfaces on the concrete railway " with a natural cement finish, washed, dressed, tooled or otherwise treated as provided by the specifications for this work; details of treatment to be furnished you later." The contractor thereupon did finish all exposed surfaces with a natural cement finish. After this was hardened and set, however, under the theory that he was then required to rub, wash, dress, tool or otherwise treat it as directed, a great quantity of work was ordered to be done by him. On each of the cement columns supporting the railroad he was required to make panels for about half their width. To do this it was necessary to remove all the cement finish and to cut into the main body of the concrete to some depth leaving a surface much rougher than would be the ordinary surface of concrete coming from the form. Around these panels a border of a few inches of the cement finish was left but this was incised by straight lines so that the panel appeared to be framed in something that resembled brick. Outside of this frame again all of the

cement finish was removed and the main body of the concrete exposed but upon it was a somewhat smoother surface than that allowed for the interior panels. Under the classification by the engineer for this work the contractor has been allowed at the unit price bid for natural cement finish.

Assuming that under article 24 of the contract the question as to whether such work is susceptible of classification under the schedule of unit prices is to be submitted to the engineer, we still think that his action may not be sustained. If his certificate is a condition precedent to payment, it still may not be arbitrarily withheld. So if his action involves an erroneous construction of the contract. If it appears that there is no reasonable basis whatever for his action; if it is patently erroneous then we find the equivalent of bad faith upon his part and the contractor is not bound by his decision.

Such is the situation here and the trial judge would have been justified in directing a verdict in favor of the plaintiff upon this claim. Either the decision of the engineer is entirely arbitrary or it must be based upon an interpretation of the contract which permits him to give to the words " the entire concrete surface to be finished shall be treated in such manner as directed " a far wider meaning than is permissible. The contractor did far more than provide a concrete finish with a uniform surface of desired color and texture which was what he agreed to do. Whichever alternative we adopt the plaintiff is entitled to be paid for the unusual and extraordinary work he was required to do.

The items 59, 3 and 60 suggest a slightly different question. Of the 4,000 feet of concrete elevated railroad about 1,400 feet was occupied by stations. The original plans, as the jury has found, applied to station areas and called for a series of concrete arches to support the structure at these points. They also showed that there would be required for this portion of the railroad 64 cross

girders containing some 90 per cent of all the steel involved and of uniform construction. It also showed a few grillage girders and some steel posts to support the station canopy. Upon this showing the contractor bid for riveted steel painted and erected sixty dollars per ton, and the same amount for steel beams and shapes with connections painted and erected. Later the Commission substituted a steel structure for that originally designed for these stations. This had called for 400 pieces of steel weighing 2,200 tons. The new plan which was actually carried out called for 4,200 pieces weighing 4,200 tons. In other words, the number of pieces was increased by eleven times and the weight increased twice. The jury has found that the change was a radical one. Clearly the kind of work required by the change was far more expensive per ton than that originally contemplated; and the steel itself was also far more expensive.

It is perfectly true that steel is steel. But it is also true that when it is to be used in a manner totally different from that originally proposed on the basis of which bids were made and necessarily costing far more per ton it may not reasonably, fairly and in good faith be classified as similar. Or if the construction given to this contract by the engineer involves that result, the construction is erroneous.

Item No. 42 is for the cost of cutting a panel in an abutment. This work was not included in the original contract but it was ordered by the Commission. It was clearly extra work ordered, as the Commission had a right to order it, unclassified, and should be paid for at cost plus ten per cent.

As we have said, we have discussed these matters as an example of the various items of which the contractor's claim against the city is composed and we are satisfied that the contractor may not be defeated because of the provision in the contract referred to by the Appellate Division. Assuming that he is entitled to recover, there

is no dispute as to the amounts involved.   In our opinion the result reached by the trial court is correct and we disapprove of the modification made therein by the Appellate Division.

The judgment of the Appellate Division in so far as it reverses the judgment of the Trial Term, must be modified so as to affirm such judgment, and as so modified affirmed, with costs to the appellant in this court and in the Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN, CRANE and LEHMAN, JJ., concur.

Judgment accordingly.