Joseph Davis, Inc., Appellant-Respondent, *v.* Merritt-Chapman & Scott Corporation, Respondent-Appellant.

Fourth Department, January 12, 1967.

*Magavern, Magavern, Lowe & Beilewech* and *Hale, Hynes & Brady* (*Leslie A. Hynes* of counsel), for appellant-respondent.

*Cleary, Gottlieb, Steen & Hamilton* (*James W. Lamberton* of counsel), for respondent-appellant.

GOLDMAN, J. This litigation arises out of a contract between defendant Merritt-Chapman & Scott Corporation (hereinafter called Merritt) and the Power Authority of the State of New York (hereinafter called the Authority) for the construction of a power plant at Lewiston, New York, and a subcontract between the plaintiff, Joseph Davis, Inc. (hereinafter called Davis) and the defendant Merritt, whereby Davis was to perform the piping system mechanical work. Both parties appeal from an order which denied their motion and cross motion for summary judgment.

The principal issue involves the question of whether the Authority was required to supply the supporting materials for the embedded pipe work and whether Davis was to be paid for the installation of supports in accordance with the unit price schedule for hangers and supports, pursuant to Davis' bid under which the subcontract work was performed. There was a further disagreement as to whether Davis was entitled to a special price for unloading, handling and installing certain material known as "Duriron" pipe. Plaintiff alleges four causes of action. In the first two plaintiff seeks to recover payment for installing 406,004 lbs. of pipe supports upon which there is a claimed balance due of $365,536.88 and the reasonable value of work, labor and services performed and materials furnished for the fabrication of the pipe supports in the amount of $126,371.29. In the third cause of action, plaintiff seeks $5,288.71 as reasonable value of work, labor and services performed and materials supplied in installing Duriron pipe. We are not here concerned with the fourth cause of action, for the motion of both parties to sever this cause of action was granted.

Special Term denied defendant's motion for summary judgment and plaintiff's cross motion for partial summary judgment and ordered that the first three causes of action be referred to Trial Term for trial of two issues of fact. Plaintiff had cross-moved for partial summary judgment on the first two causes

of action on the ground that there was no ambiguity in the contract documents and that it should recover on those causes of action as demanded in its complaint. Plaintiff had also moved to strike out defendant's separate affirmative defense which in substance claimed that the plaintiff's three causes of action were determined by the Authority to be without merit and that plaintiff was bound by such determination. Defendant cross-appeals from that part of the order which denied its motion for partial summary judgment dismissing the first three causes of action and ordering a trial of the following two issues of fact: (1) whether defendant actually received payment from the Authority for part or all of the items in dispute, or whether defendant released plaintiff's claims as part of the consideration for final settlement of all of defendant's claims against the Authority and (2) whether defendant independently agreed to compensate plaintiff for labor and materials for support of embedded pipes.

In order to resolve the questions here presented, reference must be made to the pertinent sections of the prime contract, the subcontract and the bid items involved. Article 23 of the prime contract provides that: '' In case of any ambiguity in the plans, specifications or maps, or between any of them, the matter shall be immediately submitted to the Authority, which shall adjust the same, and its decision in relation thereto will be final and conclusive upon the parties.''

Article 6 (b) of the subcontract recites that: '' Any findings, agreement, determination or decision which may be made as between Contractor and the Owner shall be binding upon the parties hereto, and in any dispute or question arising between the parties hereto, shall be determinative of the same insofar as and to the extent that said finding, agreement, determination or decision concerns the same matter or matters in dispute or in question between the parties hereto.''

The specifications of the prime contract dealing with the '' Scope of Work '' provide in '' 15-01 '' that: '' The work covered by this portion of the specifications includes the installation of all piping materials including pipe, valves, fittings, flexible metallic hoses   *   *   *   pipe hangers, and supports   *   *   * which are required to provide complete piping systems   *   *   * The Authority will furnish all materials except welding rod and cinch anchors for wall brackets which shall be furnished by the Contractor.''

In the next section, designated '' 15-02 (a) General '', it provides that: '' The Contractor shall install the piping systems in the power plant in a thorough and workmanlike manner in

accordance with the drawings and bills of material to be furnished him and as directed by the Engineer.''

From the very start of the work by Davis there ensued discussion and correspondence between Davis and Merritt in connection with the supplying of materials in accordance with the specifications and whose obligation it was to pay for the materials. In particular Davis constantly restated its demand for payment under an item designated as '' M-7 '' involving the installation of pipe hangers and supports. This claim involved $365,536.88 for the installation of the pipe supports for embedded pipe and $126,371.29 for material and fabrication of the supports. Merritt had presented these claims to the consulting engineers representing the Authority, contending that under the contract the Authority was to furnish these materials, but the engineers refused either to furnish the material or to pay for their installation. The Authority asserted that it was only bound to furnish material when piping was permanently mounted on hangers and supports, but that where piping was to be embedded in concrete all operations were to be performed by the contractor at the cost included in the bid price.

Merritt's principal defense and claim for summary judgment were based upon its contention that article 23 of the prime contract provided that in the event of any ambiguity in the specifications, the Authority's decision '' will be final and conclusive upon the parties '', and article 6 (b) of the subcontract that any decision between the contractor and the Authority '' shall be binding upon the parties hereto ''. Based upon these clauses, Special Term held that the plaintiff was bound by the Authority's determination. Special Term found that article 23 '' was applicable to the dispute in question and that the decision of the engineers was binding and conclusive ''. This conclusion, based upon the determination that ambiguities existed, is erroneous for article 23 has no application. We find that the language of the contract specifications is clear and supports the interpretation placed upon it by the plaintiff.

The effect of a clause which makes the decision of an engineer, architect or other third party final as to contract disputes is one which has been often reviewed by the courts of this and other jurisdictions. The extent of the right of a third party, such as the Authority's engineers, to bind the parties by their determination is well settled. If a contract provides that the decision or determination of an engineer shall be final and binding, such finality attaches, in the absence of fraud, bad faith or palpable mistake equivalent to bad faith, only to those determinations involving quantity or quality of material, classifica-

tion or amount of work performed, or a calculation as to a final estimate; where the expertise of the engineer is important and essential (*Sweet* v. *Morrison,* 116 N. Y. 19; *Yonkers Contr. Co.* v. *New York State Thruway Auth.,* 26 A D 2d 766; *Dowd* v. *State of New York,* 239 App. Div. 141, 142). In short, the resolution of factual disputes is the prerogative of the engineers. Absent any question of construction of the contract, the engineers' determination could not be challenged. They do not, however, have the power to construe the contract (see, generally, Ann. 137 A. L. R. 530; 10 N. Y. Jur., Contracts, §§ 155–156). The cases cited above are distinguishable from those situations where the meaning of the terms is to be construed and where the court's responsibility for construction cannot be assumed by the engineers so as to oust the court of jurisdiction (*Daniels Co.* v. *City of New York,* 196 App. Div. 856; *Merrill-Ruckgaber Co.* v. *City of New York,* 160 App. Div. 513; *Uvalde Contr. Co.* v. *City of New York,* 160 App. Div. 284; *Burke* v. *Mayor,* 7 App. Div. 128). The legal meaning of the contract is always the responsibility of the court and not of the engineers.

Applying these principles to the prime and subcontract requires a reversal of that part of Special Term's order which denied the plaintiff summary judgment on the first and second causes of action, except for the question of damages, and the case must be remitted to Special Term for a trial only on the issue of the amount of damages (CPLR 3212, subd. [c]). Having so determined, this leaves only the third cause of action which involves the extra work claim of $5,288.71 (the amount of the claim submitted by Merritt to the Authority's engineers) for the installation of Duriron pipe. In dealing with this claim, Special Term recognized the distinction between factual and legal questions and properly determined that the engineers were making a factual determination. This involved the fact of whether or not it was qualitatively more difficult to work with Duriron pipe than with ordinary cast iron. The correspondence between the parties demonstrates that this is a bona fide factual dispute and not a question of law. There being no claim that there was fraud or bad faith on the part of the engineers, this is really an issue involving quality or classification and, therefore, one left to the engineers and not the court for disposition (*Smith Contr. Co.* v. *City of New York,* 240 N. Y. 491; *Tufano Contr. Corp.* v. *Port of New York Auth.,* 18 A D 2d 1001, affd. 13 N Y 2d 848). Even though the engineers asserted the position with Merritt that the Duriron claim had no merit, there remains the issue as to whether the engineers compromised the claim with Merritt and therefore, as a matter of equity,

this question should be resolved. Accordingly, there should be a trial of the issue as to whether the Duriron claim was settled and whether Merritt received any payment for the claim and did not pay Davis any part of the amount paid for settlement.

To summarize our determination, we reverse the denial of the plaintiff's motion for summary judgment on the first and second causes of action, grant summary judgment to the plaintiff on these causes of action and remit them for a determination of the amount of damages. We affirm the denial of defendant's motion for summary judgment on the third cause of action dealing with the Duriron claim on the ground that a triable issue of fact exists as to the settlement of that claim. The fourth cause of action was properly severed.

WILLIAMS, P. J., HENRY, DEL VECCHIO and MARSH, JJ., concur.

Order unanimously modified, on the law and facts, in accordance with the opinion herein and, as so modified, affirmed, with costs to plaintiff.