*169
 
 OPINION OF THE COURT
 

 Kaye, J.
 

 In this action on a construction contract with the City of New York and the New York City Transit Authority, plaintiff contractor seeks to recover damages for additional expenses allegedly incurred as a result of unanticipated subsurface conditions, and for extra and disputed work claims. The question before us is whether a contractual provision — which the City now styles an alternate dispute resolution (ADR) provision — binds plaintiff to the determination made by the Transit Authority’s chief engineer and forecloses judicial review. For the reasons that follow, we agree with the Appellate Division majority that the disputed contract clause should not be construed as having the broad preclusive effect the City urges.
 

 In 1973, plaintiff, a joint venture, entered into a contract with defendants to construct a section of the proposed Second Avenue Subway in New York City. Article 24 of the lengthy contract provides: "To prevent disputes and litigations, the Engineer shall in all cases determine the classification, amount, quality, acceptability and fitness of the several kinds of work and materials which are to be paid for under this contract, shall determine every question in relation to the Works and the construction thereof and shall determine every question which may arise relative to the fulfillment of this contract on the part of the Contractor. His determination and estimate shall be final and conclusive upon the Contractor, and in case any question touching this contract shall arise between the parties hereto, such determination and estimate shall be a condition precedent to the right of the Contractor to receive any money under this Contract.” The "Engineer” referred to in article 24 is the Transit Authority’s chief engineer, a Transit Authority employee.
 

 In the course of the work, plaintiff encountered underground water, soil subsidence and unanticipated rock formations constituting, in its view, a change of subsurface conditions under the contract and entitling it to additional compensation. Plaintiff filed claims for these conditions with the chief engineer, as well as claims for "protest” work allegedly outside the scope of the contract, and for "extra” work involving the protection of open trenches. While many of the claims were accepted by the chief engineer, plaintiff’s changed conditions claims, extra work claim and several of its protest work claims were denied.
 

 
 *170
 
 In 1979, plaintiff commenced this action for breach of contract to recover damages for its disallowed claims. In 1980, defendants served an answer and an amended answer. More than five years later, but while discovery was not yet completed, defendants moved for leave to amend their answer to add as an affirmative defense that, following the procedure set forth in article 24 of the contract, the chief engineer’s determinations were final and conclusive and precluded plaintiff from further litigating those claims. The trial court initially denied the motion on the basis of defendant’s extraordinary and unexplained delay, which the court believed had prejudiced plaintiff. Upon renewal, the court concluded that it had been factually mistaken in finding prejudice to plaintiff, but again denied the City’s motion, this time holding that the proposed defense was insufficient as a matter of law. A divided Appellate Division affirmed that conclusion, as do we.
 

 Leave to amend pleadings should, of course, be freely given (CPLR 3025 [b];
 
 Edenwald Contr. Co. v City of New York,
 
 60 NY2d 957, 959). Where a proposed defense plainly lacks merit, however, amendment of a pleading would serve no purpose but needlessly to complicate discovery and trial, and the motion to amend is therefore properly denied
 
 (Herrick v Second Cuthouse,
 
 64 NY2d 692, 693). On two theories, plaintiff urges that the defense offered by the City is plainly without merit: first, that article 24 does not create an alternate dispute resolution procedure empowering defendant’s own employee to resolve all legal issues of contract interpretation, binding only plaintiff; and second, that if article 24 does in fact authorize such a procedure, it is unenforceable because it violates public policy, is illusory and lacks mutuality. This court has not previously decided either question.
 
 *
 

 To focus the first issue even more narrowly, plaintiff does not dispute that it is bound by the chief engineer’s
 
 factual
 
 determinations
 
 (see, Tufano Contr. Corp. v Port of N. Y. Auth.,
 
 13 NY2d 848;
 
 Ardsley Constr. Co. v Port Auth.,
 
 54 NY2d 876 [applying
 
 Tufano]),
 
 but contends that article 24 is not an agreement to be bound on the
 
 legal
 
 issues of contract interpre
 
 *171
 
 tation involved in its breach of contract claim. As the Appellate Division noted, should plaintiff fail to sustain its claim that the engineer erroneously construed the contract, the City will prevail, absent a showing that the engineer’s decision was made fraudulently, in bad faith or in palpable error (138 AD2d, at 150). The City, by its proposed affirmative defense, asserts that the court lacks jurisdiction to hear plaintiff’s claims as to the meaning of the contract because article 24 binds the contractor to all of the engineer’s determinations, factual and legal.
 

 An alternate dispute resolution agreement, like an arbitration agreement, "must be clear, explicit and unequivocal * * * and must not depend upon implication or subtlety”.
 
 (Matter of Waldron [Goddess],
 
 61 NY2d 181, 183-184.) As we recognized in
 
 Matter of Marlene Indus. Corp. (Carnac Textiles)
 
 (45 NY2d 327), parties consenting to arbitration surrender many of their "normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent”.
 
 (Id.,
 
 at 334.) The requirement of explicit and unequivocal agreement when there is to be mutually binding arbitration before a neutral arbitrator obviously takes on even greater significance when resolution of all disputes is to take place before the employee of one contracting party, and bind only the other. That standard has not been met.
 

 Clauses identical to article 24 have been found in City contracts for more than a century
 
 (see, e.g., O’Brien v Mayor of City of N. Y.,
 
 139 NY 543). That language traditionally was read as conferring upon the designated individuals — typically architects or engineers — the power to make binding decisions as to factual disputes that fell within their particular expertise, but excluding legal matters of contract interpretation
 
 (see, O’Brien v Mayor of City of N. Y., supra; Smith Contr. Co. v City of New York,
 
 240 NY 491, 496;
 
 Joseph Davis, Inc. v Merritt-Chapman & Scott Corp.,
 
 27 AD2d 114, 117-118;
 
 but see, Maross Constr. v Central N. Y. Regional Transp. Auth.,
 
 66 NY2d 341, 344, where clause specifically provided for resolution of "claims in the nature of breach of contract or fraud or misrepresentation”).
 

 That this has been the meaning assigned to a standard clause found in public works projects since the last century is, at the least, significant in assessing whether the parties here intended that the clause would commit plaintiff to be bound
 
 *172
 
 by the chief engineer’s decisions not only on the customary matters within his expertise, such as measurement, quantity and quality of materials, and classification or amount of work performed, but also by his interpretation of legal matters under the contract. Even the City — the drafter of the contract —for more than five years after commencement of this litigation apparently did not regard article 24 as anything more than such a standard clause.
 

 Apart from the historical background of the provision, article 24 of this contract cannot be said to be an explicit and unequivocal agreement to the City’s proposed ADR. Reading the clause in the context of the entire contract, as we must
 
 (Rentways, Inc. v O’Neill Milk & Cream Co.,
 
 308 NY 342, 347), the lack of such agreement is plain. The contract has 11 chapters and 81 articles, many of them containing "engineer determination” clauses. The clause in issue is found in chapter two of the contract, entitled "Work to be Done, etc.,” which deals with the labor, materials and equipment to be furnished, amplification and alteration of the drawings, compliance with plans and specifications, and inspection of the work and materials. Reading article 24 in its setting, it is reasonable to interpret that provision as having the meaning traditionally assigned to it: that it empowers the chief engineer to make conclusive factual determinations concerning the subjects covered in chapter two — labor and materials, the work to be done, and completion of the work in compliance with the plans and specifications. Notably, neither article 24 nor any provision similar to it is found in chapter five of the contract, which governs "Payments to Contractor” and sets forth a number of procedural hurdles the contractor must surmount in order to "sue” or bring an "action” or "claim” against the City.
 

 Indeed, many of the provisions in chapter five of the contract would be rendered meaningless or useless were we to accept the City’s reading of the standard article 24 clause as precluding all litigation of plaintiff’s claims. Article 42, for example, provides that the contractor’s acceptance of a final payment from the City will operate to release the City from "all claim and liability to the contractor for anything thereto-for done or furnished for, or relating to or affecting the work or for any prior act, neglect, fault or default of the Authority, the City or of any person”. It goes on, moreover, to state that "the Contractor shall not be barred from commencing an
 
 *173
 
 action for breach of contract under this provision,” provided it files a proper notice of claim. The following article makes a timely statement filed with the chief engineer a condition precedent to the contractor’s "claim for compensation” for damages. Finally, article 44-A, entitled "Limitations on Right to Sue City,” provides that "No action shall lie or be maintained by the Contractor against the City upon any claim arising out of or based upon this contract * * * unless such action shall be commenced within one year after the date of filing [of the final certificate].”
 

 The City argues that these provisions in chapter five are consistent with its interpretation of article 24. According to the City, they simply set out the conditions pursuant to which the court may entertain a claim by the contractor that the chief engineer’s otherwise binding determination concerning contract claims was infected by fraud, bad faith or gross error. We reject this reading of chapter five. In particular, such a claim would not be one for "breach of contract,” although chapter five explicitly refers to breach of contract claims. A natural and unstrained reading of its provisions indicates that both parties contemplated that the courts would have jurisdiction of a breach of contract claim made by the contractor.
 

 Thus we conclude that article 24, considered in the context of the contractual and historical setting of that standard provision, is not an explicit, unequivocal agreement for alternate dispute resolution — let alone for a dispute resolution procedure that vests final authority for all legal determinations in defendant’s own employee, and binds only plaintiff. The City’s motion to amend its answer to assert such a plainly nonmeritorious defense was therefore correctly denied.
 

 Given this conclusion, it is unnecessary for us to consider the contractor’s second contention — that the procedure proposed by the City in this public works contract is so skewed in its favor as to be unenforceable as a matter of public policy.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, etc.
 

 *
 

 In
 
 Maross Constr. v Central N. Y. Regional Transp. Auth.
 
 (66 NY2d 341), heavily relied on by the City, "the parties expressly agreed to resolve all their disputes by arbitration in the clear and unequivocal language contained in article 2 of the 'General Conditions of the Contract.’ Maross ha[d] not contended otherwise and, moreover, there ha[d] been no challenge made to the lawfulness of the arbitration provision or to its conformity with public policy.”
 
 (Id.,
 
 at 346.)