OPINION OF THE COURT
Bellacosa, J.
The issue in this case, certified to this Court by the United States Court of Appeals for the Second Circuit so that we might resolve a question of New York law, is whether New York public policy prohibits an "alternative dispute resolution CADE,’) provision that authorizes an employee of a party [the New York City Transit Authority and Metropolitan Transportation Authority] to a contract dispute, where such employee is personally involved in the dispute, to make conclusive, final, and binding decisions on all questions arising under the contract” (Westinghouse Elec. Corp. v New York City Tr. Auth., 990 F2d 76, 79). We answer the certified question in the negative and conclude that the challenged ADR provision, which expressly provides for judicial review, does not in these circumstances violate New York public policy.
I.
In 1983, Westinghouse Electric Corporation, a Pennsylvania corporation, bid on, won and entered into a contract with the New York City Transit Authority (NYCTA) and the Metropolitan Transportation Authority for the sale, delivery, and installation of power rectifier equipment to five substations for the New York City subway system. During the course of Westing *51 house’s performance under the contract, numerous disputes arose between the parties concerning whether Westinghouse was entitled to damages for delay or compensation for additional work; whether NYCTA could properly delete certain portions of the work from the contract; whether Westinghouse was being restrained from performing under the contract; and whether Westinghouse was entitled to unilaterally stop work under the contract. The alternative dispute resolution provision, article 8.03, provides:
"(a) In the event the Contractor and Authority are unable to resolve their differences concerning a determination by the Superintendent, the Contractor may initiate a dispute in accordance with the procedure set forth in this Article. Exhaustion of these procedures shall be a precondition to any lawsuit permitted hereunder.
"(b) The parties to this contract authorize the Superintendent, acting personally, to decide all questions of any nature whatsoever arising out of, under, or in connection with, or in any way related to or on account of, this Contract * * * and his decision shall be conclusive, final and binding on the parties. * * *
"(c) If the Contractor protests the determination of the Superintendent, the Contractor may commence a lawsuit in a Court of competent jurisdiction of the State of New York under Article 78 of the New York Civil Practice Law and Rules or a United States Court in New York, under the procedures and laws applicable in that court, it being understood the review of the Court shall be limited to the question of whether or not the Superintendent’s determination is arbitrary, capricious or grossly erroneous to evidence bad faith.”
Westfall (whose title is Chief Electrical Officer) is a NYCTA employee and functioned as the Superintendent and ADR adjudicator. By letter dated November 3, 1988, Westinghouse notified Westfall that the NYCTA’s failure to resolve numerous long-standing design problems and other restraints and prohibitions on Westinghouse’s work constituted a constructive stop work order. The letter requested that the NYCTA resolve all outstanding performance problems within 90 days. In a subsequent letter dated February 3, 1989, Westinghouse *52 advised Westfall that it was suspending further performance effective February 3, 1989, because the NYCTA did not respond to the problems set forth in the earlier letter. Westfall responded by letter dated February 8, 1989, acknowledging Westinghouse’s formal advice that it was suspending performance under the contract. Westfall further stated that this was a breach of contract and directed Westinghouse to discontinue all work. In addition, Westfall advised Westinghouse that a recommendation would be made that it be held in default and, on June 13, 1989, the NYCTA advised Westinghouse that that had been formally effectuated. On June 21, 1989, Westinghouse submitted to Westfall a "Request for Additional Compensation and Time Extension,” including the costs of additional labor, equipment, and general and administrative expenses Westinghouse claimed it incurred to perform the contract due to the NYCTA’s alleged failure to discharge its contract obligations. Westinghouse asked that the NYC-TA’s default declaration be rescinded and for a Superintendent’s decision, as required by article 8.03. It thus submitted itself to the ADR mechanism. By letter dated July 26, 1989, Westfall advised Westinghouse that he rejected its claims.
On August 2, 1989, Westinghouse sued in the District Court of the Southern District of New York for breach and rescission of the contract. Westinghouse argued that article 8.03 contravenes New York public policy and, therefore, is void and unenforceable. In Westinghouse Elec. Corp. v New York City Tr. Auth. (794 F Supp 79 [SD NY 1991, Haight, J.]), the District Court upheld enforceability of the provision, believing that the greater weight of the intermediate appellate authority in New York supported validity.
Westinghouse appealed to the United States Court of Appeals, Second Circuit, arguing that article 8.03 imposes a procedure for dispute resolution by a functionary inseparable from one of the parties to the dispute and, thus, fosters a predisposed adjudication process, which is contrary to New York public policy. Pursuant to this Court’s Rules of Practice (22 NYCRR), § 500.17, the Second Circuit certified the issue to our Court for the articulation of New York State law and public policy (Westinghouse Elec. Corp. v New York City Tr. Auth., 990 F2d 76, supra).
II.
Article 8.03 arrives at this Court with a dubious reputation, *53 though its validity has been upheld by lower courts. In K. G. Indus, v Metropolitan Tramp. Auth. (Sup Ct, NY County, Oct. 8, 1987, Wilk, J., index No. 5761/86, affd 149 AD2d 992), the Court affirmed a decision which dismissed the contractor’s action seeking a declaratory judgment involving the alternative dispute procedures in the parties’ contract. The claim was that they were invalid and against public policy because the contract designated the Chief Engineer, an employee of the NYCTA, to serve as adjudicator of all disputes arising under the contract. The contractor’s contention was similarly rejected in NAB Comtr. Corp. v Metropolitan Tramp. Auth. (167 AD2d 301).
Matter of Astoria Med. Group (Health Ins. Plan) (11 NY2d 128) and Matter of Siegel (Lewis) (40 NY2d 687) provide persuasive authority affecting the rationale of NAB Comtr. and K. G. Indus, at the Appellate Division. In Matter of Siegel, the parties designated a lawyer and an accountant of one of the parties as the arbitrators of any dispute arising from a stock purchase agreement. A dispute arose resulting in a demanded arbitration, but before a decision was rendered, one party refused arbitration and brought a proceeding to vacate the designation of the lawyer and the accountant as arbitrators. This Court dismissed the action, stating that as it has long been the policy of New York courts to interfere as little as possible with the freedom of consenting parties, "[t]herefore, strange as it may seem * * * a fully known relationship between an arbitrator and a party, including one as close as employer and employee * * * will not in and of itself disqualify the designee” (Matter of Siegel, 40 NY2d 687, 690, supra [emphasis added]). Our strong, albeit cautionary, sentiments expressed in Matter of Siegel and Matter of Astoria Med. Group have been extended to apply to alternative dispute resolution provisions contained in municipal contracts (see, Maross Constr. v Central N. Y. Regional Tramp. Auth., 66 NY2d 341; see also, Ardsley Constr. Co. v Port Auth., 54 NY2d 876).
Considerable authority thus supports the validity and enforceability of alternative dispute resolution mechanisms, which reflect the informed negotiation and endorsement of parties. It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91, 95; see also, Matter of Weinrott [Carp], 32 NY2d 190). These mechanisms are "well recognized *54 as an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process” (Maross Constr. v Central N. Y. Regional Transp. Auth., 66 NY2d 341, 345, supra). Thus, "[i]t has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective” (Matter of Siegel, 40 NY2d 687, 689, supra; but see, Crimmins Contr. Co. v City of New York, 74 NY2d 166; Naclerio Contr. Co. v City of New York, 116 AD2d 463, affd for reason stated below 69 NY2d 794 [noting that the cases were not decided on the precise issue here]).
Westinghouse chose, with its business eyes open, to accept the terms, specifications and risk of the bid contract, including the ADR clause. It subsequently came to believe and feel aggrieved that having an employee of the NYCTA alone decide the ongoing disputes during the performance of the contract led ultimately to decisions unfavorable to it. But this Court has noted that "even in cases where the contract expressly designated a single arbitrator who was employed by one of the parties or intimately connected with him, the courts have refused to disqualify the arbitrator on the ground of either interest or partiality” (Matter of Astoria Med. Group, 11 NY2d 128, 136, supra [citation omitted] [emphasis in original]; see also, Matter of Siegel, 40 NY2d 687, 690, supra).
Without doubt, Westinghouse understood the implications of the ADR clause prior to undertaking its business and legal risks under the whole of the multimillion dollar agreement. To allow it, after the fact, to secure the assistance and power of the courts to relieve it of a particular procedural provision, while retaining the benefits of the rest of the publicly bid public works contract, is not compelled by our precedents and would have destabilizing commercial law consequences.
Focusing on the instant case, we recognize the commercial and competing public policy realities when parties freely contract and select their own ADR process and adjudicator with some judicial review (see, Maross Constr. v Central N. Y. Regional Transp. Auth., 66 NY2d 341, 345, supra; Matter of Siegel, 40 NY2d 687, 689, supra; Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91, 95, supra). Most importantly, we conclude only that public policy has not been transgressed in this case, particularly because of the provision for judicial review of the adjudicator’s decision. That review, *55 under the terms of the agreement, is by CPLR article 78 and thus allows broader review than the usual and stricter standards of arbitration award review in article 75.
Westinghouse, nevertheless, emphasizes that this case should not rest on freedom of contract principles because of the inhibiting nature of the bid process. But Westinghouse pushes the argument too far when it urges that public policy requires that in contractual relations public entities cannot, as a matter of law, require by bid specification that private contractors (often economic giants in their own right) must allow a Chief Engineer as Superintendent to serve as the ADR adjudicator of contractual disputes, when the ADR provision itself imposes some independent review mechanism.
Relative one-sidedness is a proposition of too general a nature to resolve, by itself, such an important public contract issue. To be sure, when powerful municipalities put their public works jobs out for bid and require competition, low cost and performance in accordance with published specifications, they enjoy a virtual monopolistic-kind of power. But that does not make those contracts adhesion agreements. The courts should not, except for compelling reasons, wrest away from contracting parties a superior marketplace bargaining hand and try to equalize relatively arm’s length commercial dealings. The judicial review check provided for in this ADR provision should be sufficient to regulate and remedy intolerable abuses and one-sided economic oppression. Thus, the parties should be left to their own ingenuity to enter such agreements and solve their differences with appropriate ADR mechanisms, such as the one here. Westinghouse freely and knowingly accepted an ADR solution for its disputes with NYCTA by contract and by actual submission of such controversies. It cannot accept the whole contract, except for a part it later chooses not to accept, and should not be able to slip out of the deal after it eventually found the mechanism did not result in decisions favorable to it. That is part of the calculated business risk it undertook.
The bedrock of the doctrine of unconscionability is " 'the prevention of oppression and unfair surprise * * * and not of disturbance of allocation of risk’ ” (Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516, 522 [citation omitted]). Thus, where, as here, the parties are "dealing at arm’s length with relative equality of bargaining power,” they ought to be left to themselves (id., at 523; see also, Kalisch-Jarcho, Inc. v City of *56 New York, 58 NY2d 377, 384). The law of contracts does not allow Westinghouse to pick and choose among the provisions of its contract in this fashion.
Our public policy evaluation is also relevantly affected by the realization that billions of dollars of commercial transactions and thousands of public work contracts are outstanding containing identical or similar ADR provisions. They are entitled to some stability because they were entered into with reliance on reasonable predictability factors. These contracts were let, bid and made under what was evidently perceived to be the state of the law and valid public policy in New York, promoted and induced by judicial decisions and extant policies, such as they were, which not only tolerated but encouraged parties to freely contract generally and especially with ADR mechanisms. Altering the path taken through the forest in the fashion urged here by Westinghouse by relocating trees across the roadway would not be prudent or sound public policy (Cardozo, The Nature of the Judicial Process, reprinted in Selected Writings of Benjamin Nathan Cardozo, at 133 [Margaret E. Hall ed 1947]). The rule of law should not suddenly be changed to dislodge reliably perceived public policy in New York, which encourages parties to agree to submit their disputes to forums and persons for prompt, efficient and fair resolution, by their reckoning, not that of the courts, after the fact.
Accordingly, the certified question should be answered in the negative.
Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., and Smith concur; Judge Levine taking no part.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and records submitted, certified question answered in the negative.