10 N.Y.3d 592 (2008)
891 N.E.2d 271
861 N.Y.S.2d 238
ANTHONY COX et al., on Behalf of Themselves and All Others Similarly Situated, Respondents,
v.
NAP CONSTRUCTION COMPANY, INC., Appellant, and
GREENWICH INSURANCE COMPANY, Respondent, et al., Defendants. (And Other Actions.)
TEOFILO ARAUJO et al., Appellants,
v.
TIANO'S CONSTRUCTION CORP. et al., Respondents, et al., Defendants. (And a Third-Party Action.)
Court of Appeals of the State of New York.
Argued April 22, 2008.
Decided June 5, 2008.
*594 Biaggi & Biaggi, New York City (Mario Biaggi, Jr., and Richard Mario Biaggi of counsel), for appellant in the first above-entitled action.
*595 Barnes, Iaccarino, Virginia, Ambinder & Shepherd, PLLC, New York City (Dennis Cariello and Lloyd R. Ambinder of counsel), for Anthony Cox and others, respondents in the first above-entitled action.
*596 Wolff & Samson PC, New York City (Jonathan Bondy and Andrew S. Kent of counsel), for Greenwich Insurance Company, respondent in the first above-entitled action.
*597 Barnes, Iaccarino, Virginia, Ambinder & Shepherd, PLLC, New York City (Dennis Cariello and Lloyd R. Ambinder of counsel), for appellants in the second above-entitled action.
*598 Mayer, Ross & Hagan, P.C., Patchogue (Robert W. Mayer of counsel), for Tiano's Construction Corp., respondent in the second above-entitled action.
*599 Dreifuss Bonacci & Parker, LLP, Florham Park, New Jersey (Derek A. Popeil of counsel), for Lumbermens Mutual Casualty Company, respondent in the second above-entitled action.
Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

OPINION OF THE COURT
SMITH, J.
We hold that, when a contractor has promised to pay its workers the prevailing wages required by the United States Housing Act, the workers may sue under state law to enforce the promise.

I
Both of these cases involve contractors' agreements with the New York City Housing Authority (NYCHA) to do construction work on public housing projects funded by the federal government under the Housing Act (42 USC § 1437 et seq.). In each case, the contract between NYCHA and the contractor provided: *600 "The Contractor shall pay to all laborers and mechanics employed in the Work not less than the wages prevailing in the locality of the Project, as predetermined by the Secretary of Labor of the United States pursuant to the Davis-Bacon Act." (The Davis-Bacon Act [DBA] is now codified in 40 USC § 3141 et seq.) The payment of DBA wages is required by the Housing Act, which says that any contract between the federal government and a public housing agency for funding of a project shall "contain a provision that not less than the wages prevailing in the locality, as predetermined by the Secretary of Labor pursuant to [the DBA] shall be paid to all laborers and mechanics employed in the development of the project involved" (42 USC § 1437j [a]).
Plaintiffs are workers on the projects who claim that the contractors paid them substantially less than the "wages prevailing in the locality" as determined pursuant to the DBA. Having complained without success to NYCHA, the workers sued the contractors and their sureties in Supreme Court, alleging several violations of state law. Claims for breach of contract, quantum meruit and unjust enrichment, along with other claims we need not discuss, were asserted in both actions. The complaint in Cox v NAP Constr. Co. also included claims under various provisions of the New York Labor Law.
In Cox, Supreme Court dismissed plaintiffs' breach of contract, quantum meruit and unjust enrichment claims on the authority of Gonzalez v D&S Zaffuto Joint Venture (271 AD2d 356 [1st Dept 2000]), which held, following Grochowski v Ajet Constr. Corp. (1999 WL 688450, *3-4, 1999 US Dist LEXIS 13473, *10-11 [SD NY 1999], affd sub nom. Grochowski v Phoenix Constr., 318 F3d 80 [2d Cir 2003]), that "no private right of action exists to enforce contracts requiring payment of Federal Davis-Bacon Act . . . prevailing wages." However, Supreme Court upheld the Cox plaintiffs' Labor Law claims, finding Gonzalez inapplicable to them. Defendants appealed to the Appellate Division, but plaintiffs did not.
The Appellate Division affirmed in Cox, with one Justice dissenting. The majority did not follow Supreme Court's course of distinguishing between common-law claims that were barred by Gonzalez and Labor Law claims that were not; rather, the Appellate Division panel in Cox overruled Gonzalez and rejected Grochowski, adopting instead the reasoning of the Grochowski dissent (318 F3d at 89-91). Thus, though the contract claim in Cox was not directly before it, the Appellate Division implicitly *601 held that that claim was legally sufficient and that Supreme Court had erred in dismissing it. The Appellate Division assumed without discussion that overruling Gonzalez required affirmance of Supreme Court's decision upholding plaintiffs' Labor Law claimsi.e., that if the contract claim was sufficient, the Labor Law claims were also. Thus Cox raises in an indirect way the issue of whether plaintiffs have a state law claim for breach of contract.
Araujo v Tiano's Constr. Corp. raises the same issue directly. In that case, Supreme Court granted summary judgment dismissing the claims for breach of contract, quantum meruit and unjust enrichment. Plaintiffs appealed to the Appellate Division. Their appeal was decided on the same day as that of the Cox defendants, but by a different panel that reached an opposite result. The Araujo panel, with two Justices dissenting, adhered to Gonzalez and Grochowski and affirmed Supreme Court's dismissal.
We granted the motion of defendants in Cox for permission to appeal. Plaintiffs in Araujo appeal to us as of right, pursuant to CPLR 5601 (a). We affirm the Appellate Division's order in Cox and modify its order in Araujo, holding in both cases that plaintiffs may bring breach of contract claims under state law.

II
If the agreements between NYCHA and the contractors in these cases were ordinary private contracts, there could be no doubt about plaintiffs' right to sue on them. The contractors promised NYCHA that they would pay plaintiffs certain wages, and under long-settled rules plaintiffs would be third-party beneficiaries of those promises (Restatement [Second] of Contracts § 304; Lawrence v Fox, 20 NY 268 [1859]). It is the statutory background of the contracts that complicates the issue.
The contractors' agreement to pay "wages prevailing in the locality" was put into the contracts by NYCHA in order to comply with a condition on which NYCHA received funding from the federal government. The federal government was required to impose that condition on NYCHA by the language of the Housing Act quoted above (at 600), which refers to the DBA. The DBA requires construction and certain other contracts to which the federal government is a party to "contain a provision stating the minimum wages to be paid various classes of laborers and mechanics" (40 USC § 3142 [a]). Those *602 "minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing" in the place where the work is to be performed (40 USC § 3142 [b]).
As a matter of New York law, the fact that the contractual provisions at issue were inserted in order to comply with statutes does not alter plaintiffs' status as third-party beneficiaries (Fata v S.A. Healy Co., 289 NY 401 [1943, Lehman, Ch. J.]; Strong v American Fence Constr. Co., 245 NY 48 [1927, Cardozo, Ch. J.]). In Strong, a supplier of labor and materials on a construction project sued a subcontractor for breach of an undertaking to furnish a bond that was required by federal law. We upheld the plaintiff's claim, explaining:
"A beneficiary of the promise, a laborer or materialman for whose protection it was given, has a right of action for the damages resulting from the breach (Lawrence v. Fox, 20 N. Y. 268; Seaver v. Ransom, 224 N. Y. 233). The promise was exacted by the promisee in fulfilment of a legal duty. It was exacted for the very purpose of assuring to the plaintiff and to others similarly situated the benefit of the security established by the statute. Within the narrowest interpretation of the rule in Lawrence v. Fox, a beneficiary thus related to the promise has a standing to enforce it (Seaver v. Ransom, supra, at pp. 237, 238)." (245 NY at 53 [emphasis added].)
In Fata, we upheld a third-party beneficiary claim in a case similar to this one, though the relevant statute in Fata was state, not federal. The plaintiff there sought enforcement of a contract by which his employer agreed to "comply with the Labor Law of the State of New York" and to pay "not less than the prevailing rate" of wages (289 NY at 405). We concluded that the plaintiff had a valid common-law contract claim, even though the Labor Law provision in issue had its own enforcement mechanism: "It cannot be doubted that provisions requiring the contractor to pay such wages are also inserted in the contract, whether voluntarily or under compulsion of the statute, for the benefit of the laborers" (id.). We held that "where a valid statute requires the insertion of provisions intended for the protection of laborers or other groups in contracts relating to matters which are subject to regulation by the State," a "contractual obligation is created which may be enforced by action brought by one of the group for whose benefit the provisions have been inserted" (id. at 406; see also United States ex *603 rel. Johnson v Morley Constr. Co., 98 F2d 781, 788-789 [2d Cir 1938, L. Hand, J.] [laborers held to be "donee beneficiaries" of a contract that incorporated the provisions of a statute passed to protect them]).
In short, it is clear that New York law gives plaintiffs here a remedy, unless something in federal law prevents it from doing so.

III
Defendants argueand Grochowski and Gonzalez holdthat federal law is indeed a barrier to plaintiffs' assertion of state-law contract claims. Defendants begin by asserting that neither the DBA nor the Housing Act creates an implied federal right of action in favor of the workers those statutes benefit, an assertion consistent with the weight of federal authority.
In a number of cases, workers employed on federal projects have sued their employers under federal law for failure to pay the wages the DBA or a related statute required, and the workers have been largely unsuccessful. The first federal court of appeals to address the question held that an implied federal private right of action for workers did exist (McDaniel v University of Chicago, 548 F2d 689 [7th Cir 1977], cert denied 434 US 1033 [1978]; see also Hartt v United Constr. Co., Inc., 655 F Supp 937, 939 n 2 [WD Mo 1987], affd 909 F2d 508 [8th Cir 1990]), but three other courts of appeals later disagreed (Chan v City of New York, 1 F3d 96 [2d Cir 1993]; Weber v Heat Control Co., 728 F2d 599 [3d Cir 1984]; United States for Benefit & on Behalf of Glynn v Capeletti Bros., Inc., 621 F2d 1309 [5th Cir 1980]). In addition, a comment by the court that decided McDaniel seems to cast doubt on whether that decision would still be followed (Simpson v Reynolds Metals Co., Inc., 629 F2d 1226, 1240 n 27 [7th Cir 1980]). And in Universities Research Assn., Inc. v Coutu (450 US 754, 769 n 19 [1981]), the Supreme Court, while not directly addressing the issue, mentioned that its reasoning was "arguably" inconsistent with McDaniel.
We agree with the courts that have held that no implied federal private right of action exists, under either the DBA or the Housing Act, for workers who are paid less than the wages those statutes require (see generally Cort v Ash, 422 US 66 [1975]). Our decision in Bodrick v Mayfair Constr. Corp. (38 NY2d 926 [1976]), which holds otherwise, is no longer good law in light of the more recent federal decisions. But *604 that does not mean that plaintiffs' state claims are legally insufficient.
Defendants urge us to accept the view of the Second Circuit Court of Appeals in Grochowski that since there is no federal claim for workers under the DBA there can be no state claim, because a state claim would be "an impermissible `end run' around the DBA" (318 F3d at 86). We agree with Judge Lynch, dissenting in Grochowski, that this reasoning is flawed. To say that Congress, in enacting the DBA, did not intend to create a federal right of action is not to say that Congress intended to prohibit, or preempt, state claims. Indeed, while it is clear that federal statutes will not ordinarily be read to create new federal rights absent an affirmative indication that that was Congress's intention (see Cort, 422 US at 77-84), it is equally clear that Congress will not ordinarily be found to have preempted state law where it has not done so expressly (see Hillsborough County v Automated Medical Laboratories, Inc., 471 US 707, 713 [1985]; Jones v Rath Packing Co., 430 US 519, 525 [1977], quoting Rice v Santa Fe Elevator Corp., 331 US 218, 230 [1947] ["(T)he historic police powers of the States" are not superseded "unless that was the clear and manifest purpose of Congress"]; Matter of Tap Elec. Contr. Serv. v Hartnett, 76 NY2d 164, 169-170 [1990]). In other words, the default assumption, absent a showing to the contrary, is that Congress intended neither to create a new federal right of action nor to preempt existing state ones.
Where a federal statute does not expressly preempt state law, preemption will be found only where Congress has "completely displaced state regulation in a specific area" or where state law "actually conflicts with federal law" (Hillsborough, 471 US at 713). Neither of these bases for preemption exists here. While the Housing Act requires that workers on federally funded projects be paid the minimum wages determined pursuant to the DBA, the Housing Act is completely silent as to what remedy is available when the workers are underpaid. In this the Housing Act differs from the DBA itself, which provides that, where a contractor is employed by a federal agency, the agency may withhold from payments to the contractor enough money to make up a deficiency in payments to the workers (40 USC § 3142 [c] [3]), and that if the money so withheld is not enough to make the workers whole the workers shall have a "right to bring a civil action" to recover on the bond that federal law *605 requires federal contractors to provide (40 USC § 3144 [a] [2]; see Universities Research Assn., 450 US at 773). There is no similar provision in the Housing Act.
In Housing Act cases, there is thus no basis for an argument that federal legislation on the subject of remedies for the failure to pay prevailing wages is so pervasive, or that the federal interest in that subject is so dominant, that state common-law remedies have been preempted (see Hillsborough, 471 US at 713). The Housing Act does not regulate the subject at all. Nor is there any federal law with which state common-law remedies conflict, either in the sense that it is impossible to comply with both state and federal law or in the sense that state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (id., quoting Hines v Davidowitz, 312 US 52, 67 [1941]).
The preemption issue might be closer if this were a case to which the DBA applied not through the Housing Act, but directly. In such a casei.e., one in which the contractors had been hired to do work by a federal government agency, rather than by a local agency like NYCHAthe plaintiffs could invoke their statutory right to recover on the federally-required bond, and the defendants might argue that that was the plaintiffs' exclusive remedy (see Universities Research Assn., 450 US at 773 n 24 ["There is some evidence that Congress intended the suit on the contractor's bond to be the sole method of enforcing the obligations imposed by the (DBA)"]; but see id. at 769 n 19 [quoting a remark of counsel in oral argument: "There may be a right of action in a state court, under a state common law theory of third-party beneficiary"]). That argument is not available to defendants here. In arguing preemption, defendants are arguing in effect that Congress intended the workers to have no remedy in any court, state or federal. We see nothing to support the unlikely supposition that Congress had any such intention.
An episode in the history of the DBA reinforces our conclusion that, where no federal remedy is provided, state remedies are not preempted. The enforcement provisions of the DBA were added to it by a 1935 amendment; an earlier attempt to add such provisions was vetoed by President Hoover in 1932, and the President supported his veto with the argument that existing state remedies were preferable to newly-created federal ones. A memorandum from the Secretary of Labor explaining the veto said: "The present law affords superior protection by *606 leaving the matter of breach of its stipulations to be treated like a breach of any other stipulation of the contract" (Mem of Secretary Doak, 75 Cong Rec 14589 [July 1, 1932]). Similarly, a breach of the contractual provisions at issue here, provisions adopted pursuant to a statute that (like the pre-1935 DBA) lacks an enforcement mechanism, may be the occasion for a breach of contract suit, "like a breach of any other stipulation of the contract." (Id.)
Plaintiffs' state law claims are not preempted by federal law.

IV
Defendants argue that, even if plaintiffs have a state law cause of action, they may not assert it now because they have not exhausted their administrative remedies. The answer to this argument is simple: plaintiffs do not have any administrative remedies they can exhaust.
Defendants rely on regulations of the Department of Labor, promulgated to implement the DBA "and Related Acts" (29 CFR 5.1 et seq.). More specifically, they point to 29 CFR 5.5, 5.6 and 5.7, relating to contract provisions, enforcement of those provisions, and reports to the Secretary of Labor. It is not obvious from the face of these regulations how they apply, if at all, where, as here, the party employing a contractor is not a federal agency; but we need not puzzle over this problem, because in any event the regulations give no rights to workers to initiate or take part in any enforcement proceedings. The enforcement contemplated by 29 CFR 5.6 is enforcement by governmental agencies. The only way for workers to get the benefit of the regulations is to call violations of law to an agency's attention and hope for the besta course plaintiffs have already pursued, with very little success.
Since plaintiffs have no remedy under the federal regulations, defendants' "exhaustion" argument boils down to a claim that they have no remedy at allthat they must wait, perhaps forever, for an agency to act. This is really a kind of preemption argumenta weaker one than the one we have already rejected. Defendants are claiming in substance that the Department of Labor's regulations preempt plaintiffs' state law claims, but courts are "even more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes" (Hillsborough, 471 US at 717). And the regulations at issue here are not at all "comprehensive" in the relevant sense; they do not provide *607 any means, let alone an arguably exclusive means, by which workers who are paid less than the legally-required minimum may vindicate their rights.
Defendants rely on the mere existence of regulations for agency enforcement of prevailing wage legislation, arguing that lawsuits by private litigants may complicate, or overlap or interfere with, such enforcement. But this is no more true here than in any case where governmental and private remedies coexist. A similar argument might have been made in Strong and Fata. In those cases, a government agency might have sought to enforce the contractor's obligations to provide a bond, or to pay the statutorily-required minimum wage, and a private lawsuit might have made those tasks more complicated, but in both cases we upheld the existence of a common-law remedy. We uphold it again here.

V
What we have said leads us to conclude that plaintiffs in both these cases have valid breach of contract claims as third-party beneficiaries of the agreements between NYCHA and the contractors. As we have explained, that is not the issue directly before us in Cox: since plaintiffs did not appeal from Supreme Court's dismissal of their contract claim, only the Labor Law claims are technically in issue. But the Appellate Division assumed that the Labor Law claims were valid if the contract claim was, and no party before us has challenged that assumption. We therefore affirm the Appellate Division decision in Cox, which affirmed the denial of defendants' motion to dismiss the Labor Law claims. Our holding should not be interpreted as deciding whether the Labor Law sections on which plaintiffs rely apply to these facts.
In Araujo, Supreme Court dismissed the contract, quantum meruit, and unjust enrichment claims. It erred in dismissing the contract claims, but the other claims were correctly dismissed, because a party may not recover in quantum meruit or unjust enrichment where the parties have entered into a contract that governs the subject matter (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]).
Accordingly, the order of the Appellate Division in Cox v NAP Constr. Co. should be affirmed and the certified question answered in the affirmative, and the order of the Appellate Division in Araujo v Tiano's Constr. Corp. should be modified to reinstate the breach of contract cause of action *608 against Tiano's Construction Corp. and the suretyship cause of action against Lumbermens Mutual Casualty Company and otherwise affirmed, with costs to plaintiffs in both appeals.
In Cox v NAP Constr. Co., Inc.: Order affirmed, etc.
In Araujo v Tiano's Constr. Corp.: Order modified, etc.