**DART MECHANICAL CORPORATION,**
Plaintiff,

v.

**XL SPECIALTY INSURANCE,**
Defendant.

**Franco Belli Plumbing and Heating & Sons, Inc., Plaintiff,**

v.

**XL Specialty Insurance, Defendant.**

**Nos. 06–CV–2457 (ENV)(MDG), 06–CV–1933 (ENV)(MDG).**

United States District Court,
E.D. New York.

Sept. 30, 2008.

---

12. Gilkey was not directly asked any questions about Hughes.

Marvin Schechter, Michael D. Ganz, Jeremy R. Kalina, Turnstead Schechter & Czik LLP, Jericho, NY, for Plaintiff.

Lori S. Schwarz, Zetlin & Dechiara LLP, New York, NY, for Defendant.

### MEMORANDUM AND ORDER

VITALIANO, District Judge.

Plaintiffs Dart Mechanical Corporation ("Dart") and Franco Belli Plumbing and Heating & Sons, Inc. ("Franco Belli") (together the "plaintiffs") brought these actions against Defendant XL Specialty Insurance ("XL") to assert claims arising out of construction contracts. XL has now moved for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Dart's third and sixth causes of action and Franco Belli's fourth and fifth causes of action. For the reasons set forth below, XL's motions are granted.

### Background

XL's summary judgment motions target the claims of Dart and Franco Belli for

"impact and delay"[1] and unjust enrichment. Unless otherwise noted, the facts relevant to those claims are, in material part, undisputed.

On November 12, 1999, the New York City Transit Authority ("NYCTA") entered into a contract with Lipco Electrical Corporation ("Lipco"), as general contractor, to construct the Coliseum Bus Depot Superstructure in the Bronx (hereinafter the "General Contract"). The General Contract specified a start date of November 12, 1999 and a "substantial completion" date of July 12, 2001. In turn, Lipco subcontracted with Dart and Franco Belli, both New York corporations, to perform mechanical and plumbing work. Lipco's written agreement with Dart for $6.7 million covered heating, ventilation, and air conditioning work. Franco Belli entered into a written agreement with Lipco to perform domestic water, drainage, piping, gas, and fuel piping work for the sum of $3,968,500. These written agreements (together the "Subcontracts"), while obviously differing in their respective work specifications, contained identical language incorporation and dispute resolution provisions and also required plaintiffs to complete their work in accordance with the July 12, 2001 deadline.

On September 30, 1999, Lipco obtained a performance and payment bond from a surety, CGU Insurance Company ("CGU"). In January 2002, Lipco assigned its interests and rights under the General Contract to CGU, with CGU assuming Lipco's performance obligations. During the course of the project, XL, a Delaware corporation, became the successor in interest to CGU, thereby assuming CGU's rights and obligations under the General Contract.

As work progressed, plaintiffs received partial payment for their performance. Critically, in order to receive payment, plaintiffs were required to provide to XL signed "Affidavits and Releases". These documents contained clauses "releas[ing] Lipco, Lipco's sureties and the Owners of the Project from all claims whatsoever arising out of or relating to the subcontractor or purchase order, up to the date of this payment." It is undisputed that on some, but not all, of these releases, plaintiffs crossed out this language before signing and submitting the payment documentation to XL.

On December 27, 2001, NYCTA notified Lipco that it would be held in default for (1) "unnecessarily and unreasonably delaying the performance of the project by consistently undermanning the project," (2) "failing to allocate sufficient financial resources to complete the project," and (3) "lack of adherence to the [project] schedule" unless such default was rectified to NYCTA's satisfaction by January 8, 2002. On January 11, 2002, counsel for the NYCTA informed counsel both for XL and Lipco that NYCTA would no longer accept Lipco as the general contractor for the project and that Lipco must either "assign" the General Contract to XL or the NYCTA would terminate the General Contract for default and insist on completion by XL.

In less than three weeks, through an assignment agreement, XL assumed the role of General Contractor with respect to

---

1. Through their "impact and delay" claims, plaintiffs contend that XL prevented them from completing their work in a timely fashion and that they were damaged by this delay, a cause of action recognized under New York law. *Corinno Civetta Const. Corp. v. City of New York et al.*, 67 N.Y.2d 297, 502 N.Y.S.2d 681, 493 N.E.2d 905 (1986). All sides, it goes without saying, agree that their legal relationships are controlled by the substantive law of New York.

all relevant contracts. In executing the assignment, Lipco and XL released NYC-TA from all prior claims arising out of the general contract, including the pending claims alleged by plaintiffs. Dart and Franco Belli contend that this release was executed without their knowledge or consent.

In attempting to complete the job, XL retained Tishman Construction Corporation ("Tishman") as construction manager on March 11, 2002. XL also re-hired Lipco to perform the electrical work necessary for the project. The NYCTA declared "substantial completion" on August 27, 2003. This was over two years after the July 12, 2001 date specified in the General Contract.

Plaintiffs allege that this substantial delay in completion was caused by XL's subsequent re-hiring of Lipco and the hiring of Tishman. Plaintiffs further assert that Lipco's improper performance of electrical work and Tishman's gross mismanagement of the project caused increased costs and damages amounting to $846,081.82 for Dart and $2,552,206 for Franco Belli. Furthermore, plaintiffs claim that they relied upon the completion date specified in the General Contract in entering into the Subcontracts. Obversely, Dart claims XL was unjustly enriched by its valuable labor, material, and/or equipment to the tune of $1,511,721.88; Franco Belli similarly asserts it is owed $3,378,673.69 by XL.

Dart and XL met on several occasions between March 2003 and February 2006, to negotiate a settlement of Dart's claims for "impact and delay" and for unpaid extra work. Dart communicated its intent to file these claims in a letter to XL's agent, Cashin, Spinelli, Heller, & Feretti Corp. ("Cashin"), dated March 19, 2003. In a letter to Dart's attorney, XL's attorney acknowledged that Dart had "advised XL that it has a 'large dollar' delay claim against XL which XL disputes." Additionally, XL and Dart met on July 29, 2004, where "Dart indicated that it was in the process of preparing and submitting a delay damage claim." XL's attorneys advised Dart not to submit delay claims since such claims were barred by the "Affidavits and Releases" that Dart had executed upon receiving past payments from the surety.

On April 17, 2006, plaintiffs filed separate actions against XL, asserting claims for 1) breach of contract, 2) unjust enrichment; 3) impact and delay costs and 4) extra costs of equipment rental and warranties. XL filed the instant motions for partial summary judgment, seeking only to dismiss the claims for impact and delay and unjust enrichment on the grounds that 1) plaintiffs failed to comply with notice obligations set forth in the General Contract that were incorporated by reference into the Subcontracts, 2) other incorporated provisions of the General Contract barred recovery of damages for delay claims 3) all the relevant contracts provide for a dispute resolution procedure with which plaintiffs failed to comply and 4) plaintiffs released their claims when they signed the "Affidavits and Releases". XL also argues that each unjust enrichment claim should be dismissed because plaintiffs' claims arise out of valid contracts. Plaintiffs counter that 1) the General Contract's notice provisions are not incorporated into the Subcontracts, which do not otherwise contain any notice provisions, 2) the General Contract's bar on delay damages is similarly not incorporated into the Subcontracts, 3) that XL is attempting to impermissibly "pass-through" plaintiffs' claims via the dispute resolution clause, and 4) the facts indicate that the Subcontractors did not intend to release any claims through the "Affidavits and Releases". Plaintiffs do not respond to XL's

arguments concerning their unjust enrichment claims.

### *Discussion*

#### 1. *Standard for Summary Judgment*

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is thus not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir.1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984)). In deciding such motions, the moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, *see, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005), and the evidence presented will be construed liberally in favor of the party opposing the motion, *see, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir.2004).

Once the moving party has met its initial burden of demonstrating the absence of a disputed issue of material fact, the burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party may not then rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Thus, if the evidence favoring the nonmoving party is "merely colorable ... or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### 2. *The Impact and Delay Claims*

In asserting and defending the impact and delay claims, the parties battle with fuss and fury about whether the notice and damages provisions of the General Contract have been effectively incorporated into the Subcontracts. Overlooked is another contractual clause providing the method of dispute resolution. Notwithstanding any other argument, this clause, applicable to both Subcontracts, is dispositive of the motions and the challenged claims.

#### A. *Propriety of the Dispute Resolutions Clauses*

As dispute resolution clauses require parties to sacrifice "normal rights under the procedural and substantive law," New York courts have generally required explicit and clear expressions of intent to submit to alternative dispute resolution before giving full effect to such clauses. *Crimmins Contracting Co., Inc., et al. v. City of New York, et al.*, 74 N.Y.2d 166, 171, 544 N.Y.S.2d 580, 582, 542 N.E.2d 1097, 1099 (1989). This is especially true when a dispute resolution clause purports to vest the authority to settle all questions pertaining to a contract with a representative of one of the contracting parties. *Id.*

■ When a contractual clause requiring alternative dispute resolution does not allow for any form of judicial review, it must be read restrictively, excluding legal questions from its purview. *Id.* at 173, 544 N.Y.S.2d at 582, 542 N.E.2d at 1099. However, when combined with some form of judicial review, these clauses are fully enforced, obligating the party to submit

not only to the factual determinations of a contractually-specified umpire, but also to the umpire's legal conclusions. *Westinghouse Elec. Corp. v. New York City Transit Auth. et al.,* 82 N.Y.2d 47, 54–55, 603 N.Y.S.2d 404, 407–08, 623 N.E.2d 531, 534–35 (1993). Indeed, as these types of unilateral clauses are found in "billions of dollars of commercial transactions and thousands of public work contracts," enforcement of such clauses when properly structured is an important component of New York's public policy. *Id.* at 56, 603 N.Y.S.2d at 408, 623 N.E.2d at 535.

It is against this backdrop that the Court must evaluate the dispute resolution language found in the Subcontracts. Both Subcontracts contain an identical dispute resolution clause. These clauses provide that

> The Subcontractor agrees to submit all disputes or claims arising under, or related to the Subcontract to the Contractor for presentation to, and determination by, the Chief Engineer or the Contractual Disputes Review Board (CDRB). Subcontractor further agrees that submission of any claims or disputes under said Dispute Resolution Procedure (Article 8.03 of [the General Contract]), shall constitute the sole remedy for such claims or disputes it may have or which may arise during the course of the contract work against the Contractor, Contracting Party of Transit Authority.

The referenced Article 8.03 of the General Contract delineates more clearly the obligations imposed by the contractual dispute resolution procedure. Section (b) of that provision specifies that the Chief Engineer is to make determinations concerning "technical issue(s) under the [General Contract]," while the CDRB is to hear all other questions. Section (c) further provides that an aggrieved party must make a written submission to either the Chief Engineer or the CDRB within ten days of the incident, and goes on to describe the mediation and arbitration process to be followed. Finally, section (a) provides that "[e]xhaustion of these dispute resolution procedures, including the judicial review set forth in Article 8.06 shall be the parties' sole remedy in connection with any Dispute."[2]

Standing alone, of course the dispute resolution clauses found in each Subcontract would provide no form of judicial review and would be inapplicable to legal issues presented in the current dispute. *See Crimmins,* 74 N.Y.2d at 171, 544 N.Y.S.2d at 582, 542 N.E.2d at 1099. But, taken together with the protections of Article 8.03 of the General Contract, this type of alternate dispute resolution agreement would be substantially similar to the ones found in "thousands of public work contracts" and approved by the New York Court of Appeals in *Westinghouse,* 82 N.Y.2d at 56, 603 N.Y.S.2d at 408, 623 N.E.2d at 535. When the smoke clears then, the central question is whether or not the General Contract's judicial review

**2.** Article 8.06 of the General Contract allows for judicial review in any New York state court pursuant to Article 78 of the CPLR, or in any federal district court with appropriate jurisdiction. This contractual provision, however, cabins a court's review only as to "whether or not the Arbiter's determination is arbitrary, capricious, or lacks a rational basis." Despite its clear limitations on a reviewing court's authority, such clauses do not

contravene New York law or its public policy. Quite to the contrary, the use of such a clause has been specifically approved by the New York Court of Appeals because it provides more protection than that even afforded review of arbitration awards pursuant to Article 75 of the CPLR. *Westinghouse,* 82 N.Y.2d at 56, 603 N.Y.S.2d at 407, 623 N.E.2d at 534. *See Westinghouse Elec. Corp. v. New York City Transit Auth.,* 14 F.3d 818, 823 (2d Cir.1994).

provisions have been successfully incorporated into the Subcontracts.

### B. *Incorporation of the Dispute Resolution Clauses*

■ Generally, clauses which seek to bind a subcontractor to the terms of a prime contract through incorporation by reference only bind the subcontractor to provisions relating to the "scope, quality, character and manner of the work to be performed by the subcontractor." *Bussanich v. 310 E. 55th St. Tenants,* 723 N.Y.S.2d 444, 445, 282 A.D.2d 243, 244 (1st Dep't 2001). By no means can it be said, though, that other terms in a prime contract can never be incorporated into a subcontract by reference. New York construction contract law merely holds that other kinds of provisions cannot be incorporated with standard, blanket incorporation language. *See Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.,* 946 F.2d 1003, 1008 fn. 5 (2d Cir.1991) (noting that a clause barring damages for delay may be incorporated into a subcontract when the incorporation is express and unambiguous).

■ This is not the case here. The provisions of Article 8.03 of the General Contract have been specifically identified and expressly incorporated into the Subcontracts. Put differently, it does not matter whether the General Contract's blanket incorporation clause would be sufficient to incorporate the alternate dispute resolution provisions relied upon by XL because such reliance is unnecessary given that the dispute resolution clauses in each Subcontract include their own specific incorporating language.

Pointedly, the Subcontracts specifically link the dispute resolution procedure they mandate be followed by plaintiffs to a particular article in the General Contract, which in turn, expressly provides that plaintiffs agree to submit all disputes or claims for determination by the Chief Engineer or the CDRB and to treat the dispute resolution procedure as the sole remedy available to them. Moreover, the clause in each Subcontract states unequivocally that the Subcontractor agreed to accept "the results of such determination of said claims or disputes pursuant to said Article 8.03, and related provisions of Chapter 8 of [the General Contract.]" Finally, each clause states that if the subcontractor failed to submit a claim in accordance with its obligations under the Subcontract, the subcontractor "agrees to be bound by any determination under the Disputes Resolution Procedure applicable thereto." In light of such unequivocal language, it is no stretch at all to conclude that the parties agreed contractually that Article 8.03 and its related provisions in Chapter 8 of the General Contract were to be expressly incorporated in the Subcontract.

### C. *Application of Dispute Resolution Clauses*

Now, given the applicability of these alternative dispute resolution procedures, plaintiffs, upon concluding that the subject claims existed, were obligated to present them to XL so that the Chief Engineer, or more likely the CDRB, could address them. If plaintiffs were dissatisfied with the ensuing result, they were fully entitled by that very process to pursue the matter further in court, subject to the limiting conditions of the General Contract. Critically, however, Dart and Franco Belli both agreed to waive any unilateral access to the courthouse without exhaustion of this contractually-mandated non-judicial conflict resolution mechanism.

■ Plaintiffs argue that XL's purported reliance on Article 8.03 and the Subcontracts' dispute resolution clauses is simply

an attempt to transform plaintiffs' claims against XL into claims against the NYC-TA, all of which have been released. Whatever the merit of such suspicion, it cannot overcome the plain contract language. Having failed to exhaust the alternate dispute resolution mechanism they agreed to, Dart and Franco Belli are not entitled to "secure the assistance and power of the courts to relieve it of a particular procedural provision, while retaining the benefits of the rest of the publicly bid public works contract." *Westinghouse*, 82 N.Y.2d at 54, 603 N.Y.S.2d at 408, 623 N.E.2d at 534. XL is entitled to summary judgment dismissing the impact and delay claims alleged in the complaints.

### 3. *The Subcontractors' Unjust Enrichment Claims*

■ Although, where it exists at all, the briefing on this point is sparse, the Court nonetheless observes the black letter law that an action for unjust enrichment does not lie in New York where a valid contract controls the parties' relationship. *See Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (1987). Bluntly, parties "may not recover in quantum merit or unjust enrichment where the parties have entered into a contract that governs the subject matter." *Cox v. NAP Const. Co., Inc.*, 10 N.Y.3d 592, 606, 861 N.Y.S.2d 238, 245, 891 N.E.2d 271, 278 (2008). Neither party has introduced any evidence, nor even advanced any argument, questioning the overall validity of the contract. Nor have plaintiffs offered any reason to depart from New York's well-settled rule. As a result, the unjust enrichment claims advanced by Dart and Franco Belli cannot withstand XL's motions either.

### Conclusion

For the foregoing reasons, XL's motions for partial summary judgment are grant-ed. Dart's third and sixth causes of action are dismissed. Franco Belli's fourth and fifth causes of action are dismissed. The parties are directed to prepare for trial on the remaining causes of action. With respect to the remaining claims, the parties are directed to contact United States Magistrate Judge Go on or before October 16, 2008 to arrange for a pretrial conference and the prompt submission of a final joint pretrial order.

SO ORDERED.